## BLAND v. TALLEY.

| 50 | 71 |
| 63 | 379 |
| 50 | 71 |
| e70 | 149 |

1. TRUSTS: *Statute of frauds: Parol agreement for interest in land.*
   A parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a purchaser that he buys for another, without an advance of money by that other, falls within the statute of frauds, and cannot create a resulting trust.

2. SAME: *Same.*
   On a bill to establish a resulting trust in a tract of land, the plaintiff in effect, proved that he and W. and J. entered into a parol agreement to purchase the land on a credit, pay for it out of their joint labor, and that the three should own it, when pa'd for, in equal shares; that W. purchased the land in his own name, furnished all the money and took the title to himself. *Held:* That the agreement was void by the statute of frauds and there was no trust in favor of the plaintiff and J.

APPEAL from *Howard* Circuit Court in Chancery.

H. B. STEWART, Judge.

*Smoote, McRae & Arnold, for appellants.*

All trusts of land must be made manifest and proved by writing signed by the party declaring the trust, except such

as arise by implication of law.    *Mansf. Dig., secs.* 3382–3;
42 *Ark.,* 503.   The facts here are not such as to raise an implied or resulting trust :

I.   A resulting trust does not arise when one person purchases land upon his own credit, and takes title in his own name, and the undertaking to act for the benefit of another is by parol.   3 *A. K. Marsh,* 56; 4 *Md.,* 465.   Something more than a violation of a parol contract is necessary to raise a trust.   No fraud is alleged or proved, nor any thing to make this more than a breach of contract, if there was any such.   2 *Watts,* 283; 2 *N. Y.,* 39; 51 *Ill.,* 458; 43 *Ark.,* 393; 13 *Ill.,* 236; 1 *Johns. Chy.,* 134; 25 *Me.,* 267.

Money must be paid, or an absolute obligation to pay it assured at the time of the purchase.   2 *Johns. Chy.,* 408; 2 *Perry on Trusts, sec.* 133; 2 *Paige,* 218; 40 *Ark.,* 62.

The evidence does not bring this case within the rule, that where one pays the purchase money, and another takes the title in his own name, a trust is raised.   Such a trust cannot be predicated upon a conditional contract, especially where the condition has not been performed.   25 *Me.,* 267.

Admitting that John L. did contribute something by his labor towards paying for the land, it is impossible to say how much, and under these circumstances no trust will arise. 15 *Wend.,* 647–50; 31 *Md.,* 71; 30 *Me.,* 121–7; 50 *Id.,* 468; 53 *Id.,* 408; 25 *Cal.,* 326; 14 *Gray,* 121; 39 *Penn. St.,* 385.

See also 69 *Ind.,* 419, a case like this; and 25 *Me.,* 267.

II.   Review the evidence and contend that there is no sufficient evidence to sustain a trust.   One asserting such a trust must show by clear, decisive, satisfactory and indisputable proof that the purchase was made for the party asserting it, and that the purchase money was paid by him.   *Crow v. Watkins,* 48 Ark.; 44 *Id.,* 365; 30 *Me.,* 121; 18 *Penn. St.,* 283; 1 *Johns. Chy.,* 590; 70 *Me.,* 276.   The loose state-

ments of William H. of what he might, or intended to do, under a certain state of circumstances, are not sufficient. Authorities *supra*.

*J. D. Conway and R. B. Williams*, for appellee.

1. The facts in this case establish a resulting trust as defined by *Perry on Trusts*, 2d Ed., sec. 137. Such trusts are specially excepted in our statute of frauds. *Mansf. Dig., sec. 3833*; 3 *Johns.*, 216. The evidence shows that William H. bought for himself and brothers, intending that they should each have an interest in the place when it was paid out, if they contributed by their labor to making the payments; they did so contribute, and a trust arose in their favor. 27 *Ark.*, 86; 40 *Id.*, 62; 1 *Strobt. Eq.* (*S. C.*), 103.

Parol evidence admissible to show the intention of all the parties and the state of their minds when the contract of purchase was made, and the reasons inducing Frank and John L. to stay on the place and carry out their agreement. 42 *Ark.*, 503; 44 *Id.*, 365; 5 *Tex.* 23; 1 *Strobt. Eq.*, 103.

2. When land is purchased with the money of two or more persons, and the conveyance taken, by agreement, in the name of one of them, a resulting trust arises in favor of the others. 18 *N. H.*, 340; 35 *Me.*, 41; 21 *N. H.*, 107; 38 *Id.*, 387; 40 *Ark.*, 62. See also 45 *Ark.*, 422.

SMITH, J. The object of the bill was to establish a resulting trust in land. It alleged that the plaintiff, John L. Talley, and his two brothers, William H. and Frank, both since deceased, had, in the year 1872, purchased a tract of two hundred acres of land for $1,200, the same to be held in common and in equal shares; that as the plaintiff and Frank were minors, it was on that account agreed that the purchase should be made in the name of William H.; that the purchase was entirely upon a credit and the land was to be paid

for entirely out of the crops produced by their joint labor; that the brothers took possession of and farmed the land together under this agreement, until the death of Frank, which occurred in February, 1875; that about this date a payment of $500 was made on the land out of the proceeds of crops raised by the joint labor of all three; that after the death of Frank, the residue of purchase money was in like manner paid from crops produced by the two surviving brothers and the title deeds were made to William H., who frequently promised to convey to the plaintiff his share, but died without having done so.

The answer specifically denied all the material averments of the bill. It denied that the purchase of the land was for the joint account of the brothers, and asserted that it was made by William H. with his own money and for his individual benefit.

The circuit court appointed a receiver, upon the coming in of the answer, to take charge of the place and collect the rents and profits. And at the hearing it established the alleged trust, and decreed that the plaintiff was the equitable owner of one third of the land, and the heirs at law of Frank were entitled to another third upon the payment of one-third of such part of the purchase money as was paid after his death.

The proofs showed the following state of facts: At the date of the purchase in 1872, William H. Talley had charge of John L. and Frank, lads aged respectively fourteen and sixteen years, and also of a sister. The family was poor. William H. had no cash capital, but was an enterprising farmer and owned four horses and mules, a wagon and the ordinary farm tools and implements. His brothers and sister had no property of any description, but for their support and education were dependent upon him and their own labor. He seems to have bought the land for the purpose of pro-

viding a home for himself and them and with a view to keep
the family together.   His ability to pay for it depended on
the result of his farming operations; and the factors which
contributed to his success were his own energy and skill in
farming, the labor of his brothers and sister, his team and
the credit he enjoyed as a managing farmer.   The bond for
title and the deed of conveyance, when, five or six years
later, the payment was finally completed, were in the name
of William H.   In fact the vendors had never heard of his
brothers.   So we may be sure the land was not sold on the
credit of their labor.   The family settled upon the land
about January, 1873; the sister doing the household work
and the brothers laboring in the field.   Frank died about
two years afterwards.   William H. married in 1876.   The
sister married in the following year and withdrew to her
husband's house.   John L. remained, going to school a part
of the time and working on the farm the rest of the time.
His board, clothes and washing were furnished by his
brother, who also paid his me'ical and school bills.   When
he grew to man's estate, he was furnished with as much land
as he could use, free of rent, and with a horse to work it;
and he made crops to himself and appropriated the proceeds
of them to his own use, living all the time in the house and
at the expense of his brother.   The land was not paid out
solely by the labor of the brothers.   After the first year,
tenants were procured, to whom William H. furnished team
and supplies.   And these tenants, whose contracts and busi-
ness relations were with William H. alone, must have raised
the principal part of the crops.

William H. died in 1882, leaving a widow and infant
child.   After his death John L. rented land from his widow.
But after the widow remarried, he refused to pay rents and
set up a claim of title.

The evidence of a recognition by William H. of his broth-

Bland v. Talley.

ers' interest in his purchase goes only to this extent : that he stated to several persons on different occasions, about the time of the purchase and subsequently, that he bought for them as well as himself and that, if they would stay with him and help him pay out the land, they should have an interest in it. What that interest was to be was not mentioned in any of these conversations. The title to real estate ought not to be affected by such loose declarations and equivocal expressions, where the speaker may have meant one thing and the witness may have understood another.

The plaintiff swore that the three brothers agreed to buy the place and pay for it out of their joint labor on the farm, and when paid for, to own it share and share alike ; that the business was to be transacted in the name of William H., he being the only one of the three who was of age, and that their shares were to be conveyed to the younger brothers when they reached their majority. It is not alleged nor shown that Frank and John L. paid any definite aliquot part of the purchase money, but only that the proceeds of their labor contributed to its payment.

1. TRUSTS: Statute of frauds: Parol agreement for interest in land.

Passing over the inherent improbability that a mature man of sound judgment, engaging in an arduous undertaking, should have associated with himself upon equal terms two boys, who could not be of any possible assistance beyond the manual labor they might perform, the story, if true, amounts only to this: that the three agreed to purchase and one furnished all the money and took the title to himself. Now a parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a purchaser that he buys for another, without an advance of money by that other, falls within the statute of frauds and cannot give birth to a resulting trust.

If the creation of the trust is not manifested by any writing and no fraud has been practiced in obtaining the title,

Bland v. Talley.

the trust must arise from the payment of the purchase money and not from any agreement of the parties. *Mansf. Dig*, secs. 3282–3; 1 *Lead. Cases in Equity, 4th Am. Ed.*, 322, 336, *notes to Dyer v. Dyer; Bispham's Principles of Equity*, sec. 80; *Perry on Trusts, sec.* 133; *Bartlett v. Pickersgill*, 1 *Eden*, 515; *Irwin v. Ives*, 7 *Ind.*, 308 ; *Barnet v. Dougherty*, 8 *Casey*, 371 ; *Bickel's Appeal*, 86 *Pa. St.*, 204 ; *Cook v. Bronaugh*, 13 *Ark.*, 183; *Hackney v. Butts*, 41 *Id.*, 393; *Robinson v. Robinson*, 45 *Id.*, 481.

In *Neal v. Neal*, 69 *Ind.*, 419, the complaint alleged that 2. **SAME**
*Same.*
certain land had been purchased by the plaintiff's father, under an agreement with plaintiff, that if the plaintiff would stay with his father and work for him for three years, the plaintiff being then twenty-one years old, the labor performed by the plaintiff should entitle him to one-half of the land; that the plaintiff had performed the labor for the stipulated period; and that the defendant, with the means acquired by their joint labor, had bought the land, taking title to the whole in himself. It was held, on demurrer, that the contract was presumably by parol, no writing being alleged and that, if so, it was void by the statute of frauds. It was also held that there was no trust.

Equity will not decree William H. Talley a trustee, because he used the proceeds of his brothers' labor, with their consent, in paying for the land, under a promise to give them an interest in the land. This would not put them on any higher vantage ground than if they had lent the money to make the payment under a like promise.

The decree is reversed and cause remanded with directions to require the receiver immediately to surrender the lands to the widow and heirs of William H. Talley, to pass his accounts and pay over to them all moneys in his hands; then to discharge the receiver and enter a decree, dismissing the plaintiff's bill.