VEASEY *v.* VEASEY.

Opinion delivered December 8, 1913.

1.  TRUSTS—EXPRESS TRUST—ORAL TESTIMONY.—Where a deed convey-
    ing property is absolute in form, an express trust can not be
    engrafted upon it by oral proof.   (Page 394.)

2.  TRUSTS EX MALEFICIO—EVIDENCE—SUFFICIENCY.—Where A. acquired
    title to property by a deed, absolute in form, evidence of a parol
    agreement between A. and the grantor to turn the property over
    to appellants, held · insufficient to overturn the deed and establish
    a trust *ex maleficio.*   (Page 394.)

3.  LIMITATION OF ACTIONS—LACHES—TRUSTS.—B. deeded land to A. by
    a deed absolute in form.   A. went into possession and exercised
    ownership over the lands, conveying away portions of the same.
    *Held,* where appellants had knowledge of these facts, and for a
    period of over seven years failed to assert any claim to the lands,
    they will be barred by laches and the statute of limitations from
    having a trust declared in A. for their benefit.   (Page 394.)

Appeal from Drew Chancery Court; *Zachariah T.
Wood,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellants instituted this action against appellee to
cancel a .will made by Geo. E. B. Veasey to appellee, and
to have the lands mentioned in the will, and other lands,
declared the property of appellants as the heirs of Abner
Veasey, deceased.   The appellants alleged, among other
things, that Abner Veasey died about 1869 or 1870 seized
and possessed of the lands, which they describe in their
complaint, that, being aged and infirm, a short time prior
to his death he conveyed all of the lands mentioned, as
well as all of his personal property, to his son, Geo. E. B.
Veasey, with the express understanding that the latter
was to hold the same for his lifetime only, and upon con-
dition that he would care for, educate and maintain cer-
tain minor children of Abner Veasey, and that before
the death of Geo. E. B. Veasey he should, by will or deed,
partition all the property conveyed to him, with its in-
crease, among the heirs of Abner Veasey as their re-
spective interests might appear according to the statute
of descent and distribution; that at the time of the mak-

ing of the above deed Geo. E. B. Veasey was an old bachelor, residing with his father, and that his father was old and infirm; that the deed was accepted by Geo. E. B. Veasey with the understanding and knowledge that he was to hold and dispose of the lands for the purposes and only the purposes above set out; that Geo. E. B. Veasey died in 1911, an old bachelor and without any heirs except appellants; that in violation of the trust and confidence reposed in him by his father, Abner Veasey, and in violation of the conditions upon which he accepted the property aforesaid he, on the 9th day of October, 1898, attempted to dispose of all the property mentioned in the deed to the appellee, Pearl Veasey, who was a stranger in blood to both Abner Veasey and Geo. E. B. Veasey; that on the 14th of September, 1911, the Drew Probate Court admitted to probate and record the will of Geo. E. B. Veasey to Pearl Veasey, which was a cloud on appellants' title. They prayed that the court declare the property a trust in the hands of Geo. E. B. Veasey for the benefit of himself for life and for the appellants thereafter; that the will be cancelled as a cloud upon appellants' title, and that a receiver be appointed to take charge of the property, collect the rents during the pendency of the suit, and that a trustee be appointed to make proper conveyances to the appellants as heirs of Abner Veasey, and for general relief.

The appellee, who was a minor, through her guardian, answered, denying all the material allegations of the complaint adverse to her rights under the will, set up her title to the property under the will mentioned in the complaint; alleged that Geo. E. B. Veasey was her father, and set up laches, the statute of limitations and the statute of frauds in defense.

A witness on behalf of the appellants testified that some time between 1869 and 1871 Abner Veasey died; that he was acquainted with Abner Veasey, and with his son, Geo. E. B. Veasey; that he knew about the making of the deed in controversy from a conversation he had with Abner Veasey during his lifetime, in which Abner Veasey

told witness that he had conveyed to Geo. E. B. Veasey all that he possessed, and that George Veasey was to stay with Abner Veasey during his lifetime. In the conversation he said that he could not live long, and that George had promised that he would never marry anybody and never have a family, and that he would stay at home and educate the minor children; that George was to have control over all the property conveyed to him during his lifetime, and that after his death the property was to go back to Abner Veasey's heirs. George E. B. Veasey was present during this conversation, and said that he would carry out what he had agreed to with his father and that he had agreed with his father. The last conversation witness had with George Veasey was in 1896 or 1897. At that time he said he "had got the children all grown up and that he would make some money now, and that he expected to execute the contract with his father to the letter of the law." In the conversation between Abner Veasey, George Veasey and witness nothing at all was said as to the consideration of the deed. What he wanted was some one to take care of and be guardian for his children; that his property be saved and the children raised on it, and that George had promised that he would never have a family, but he was to raise, educate and settle the minor children, and after George's death the property was to revert to Abner Veasey's heirs. The witness never saw the deed; all he knew about it was what the parties told him. They both told him the same thing. There was no one else present at the conversation. The witness, at the time of giving his testimony was eighty years old. Objection was made to the testimony as being incompetent and irrelevant.

Another witness testified that in 1908 he attempted to buy some of the land from George Veasey; the lands were part of the old place. "One of the heirs said to me that he didn't want me to do it. I went to George Veasey and told him that I had the money ready for him and he said, 'All right.' I said there was some of the heirs objecting to it. He said, 'I expect you had better leave

that land off. It will be all right as long as I live, but after I die it might cause you some trouble, and if you have worked as long as I have you have no money to throw away.' "

A witness, Belle Halley, testified that she had known George Veasey during his lifetime, having lived with him about eighteen years before he died. The appellee was her daughter and the daughter of George E. B. Veasey. They were never married. Appellee was born out of wedlock, but George Veasey recognized and considered her as his daughter all of his life and she and witness lived with him continuously after appellee's birth. During all that time George E. B. Veasey claimed to be the owner of the lands involved in the suit and he used and controlled them as his own. During the time he sold and conveyed the greater part of the lands. Witness then detailed the several sales that George Veasey made to his brother, Will Veasey, and other of his kinspeople, claimants in this suit, and showed that the grantee executed their notes for the purchase money of the lands. George E. B. Veasey loved his daughter, Pearl Veasey, the appellee, very much, and made a perfect idol of her during his lifetime.

Witness further states that George E. B. Veasey told witness that he had given his half-sisters, Mrs. Lorena Kimbro and Mrs. Olin Sanderlin, and his sister, Mrs. Jennie Berryman, 160 acres of land each; and also his half-brothers, Andrew and Will Veasey, 160 acres each. He said he did this simply because he had reared them and schooled them and wanted to give them a start in life.

The deed from Abner and Mary Veasey was introduced, which was a warranty deed to all the lands mentioned in the complaint from Abner and Mary Veasey, his wife, to George E. B. Veasey, "in consideration of love and affection and the sum of ten dollars paid to them by George E. B. Veasey." Various other deeds also were introduced showing that George E. B. Veasey had conveyed various tracts of the land to his brothers and

sisters and to others, all the deeds being dated at various times from as early as December 18, 1884, to as late as the 25th day of January, 1908; and the will was also introduced, in which George E. B. Veasey bequeathed to appellee all his property.

The court "found that plaintiffs were attempting to engraft an express trust for their use into the deed from Abner Veasey to George E. B. Veasey; that the said deed is absolute on its face and conveyed to George E. B. Veasey, in fee simple, the lands described in the said deed; that the evidence offered by plaintiffs is not competent to establish a trust in this action, and that it falls within the statute of frauds and that plaintiffs are barred by the statutes of limitation," and entered a decree dismissing appellants' complaint for want of equity, and quieting the title of appellee to the lands in controversy.

*B. L. Herring,* for appellant.

1. The record discloses a state of facts which forces the conclusion that George E. B. Veasey took the property under circumstances which fix upon him the character of a trustee *ex maleficio.* In a case like this, the statute of frauds does not apply. 73 Ark. 310-313; 1 Murphy (N. C.) 141; 3 Am. Dec. 681.

2. Appellants are not barred by the statutes of limitation. 63 Tex. 432; 18 N. H. 340; 45 Am. Dec. 371; 89 Cal. 575; 26 Pac. 1108; 7 Ga. 154; 88 Mich. 177; 50 N. W. 143.

*Williamson & Williamson,* for appellee.

1. Oral proof will not be heard to engraft an express trust upon a deed absolute in terms. Kirby's Dig., § 3666; 57 Ark. 632; 45 Ark. 483; 50 Ark. 76; 67 Ark. 530; 101 Ark. 451; 1 Perry on Trusts (3 ed.), § § 29, 78, 79, 94, 134, 135, 140, 162; 39 L. R. A. (N. S.) 906, note.

2. Appellants are barred by limitation. Their claim is stale. 103 Ark. 58; 145 S. W. 885; 1 Perry on Trusts (3 ed.), § § 141, 201.

WOOD, J., (after stating the facts). The deed of Abner Veasey to George E. B. Veasey, being absolute in

form, an express trust can not be grafted upon it by oral proof. Kirby's Digest, § 3666; *Robinson* v. *Robinson,* 45 Ark. 483; *Bland* v. *Tally,* 50 Ark. 76; *McDonald* v. *Hooker,* 57 Ark. 632; *Salyers* v. *Smith,* 67 Ark. 530; *Spradling* v. *Spradling,* 101 Ark. 451.

We hardly think the testimony sufficient to overturn the deed and establish a trust *ex maleficio,* as that trust is defined by Mr. Pomeroy, and quoted with approval by this court in *Ammonette* v. *Black,* 73 Ark. 310, and *Bragg* v. *Hartney,* 92 Ark. 55; 2 Pom. Eq. Jur., § § 1055, 1056. But even if such a trust were proved, appellants would be barred from asserting any rights to the property by both laches and the statutes of limitation. This suit was instituted the 2d of January, 1912. The deed challenged was executed October 30, 1869. Appellants certainly knew after they became of age that George E. B. Veasey was deeding the land to the heirs as well as to strangers in blood and otherwise using and controlling the same as his own. They knew that he had thus repudiated the trust, if one ever existed; and after having such knowledge they failed for a period of more than seven years to assert any claim to the lands, during all of which time George E. B. Veasey was in the adverse possession of the same and exercising acts of ownership over the same entirely inconsistent with any trust relations and wholly antagonistic to the rights of any other person. See *Finley* v. *Finley,* 103 Ark. 58.

The decree is therefore correct, and it is affirmed.