PUMPHREY v. FURLOW.

Opinion delivered May 24, 1920.

1. PARTNERSHIP—EVIDENCE.—Evidence *held* insufficient to establish
   a partnership between plaintiff and defendant in the purchase
   of land; there being no agreement to buy the land for the pur-
   pose of resale, and to share equally in the expenses and profits.

2. TRUSTS—RESULTING TRUST.—Where plaintiff alleged that defend-
   ant agreed to purchase land at not exceeding $25 per acre and to
   sell part of it to him at the price paid, and it appeared that de-
   fendant purchased the land for $15 an acre and subsequently
   sold part of it to plaintiff for $25 an acre, no resulting trust
   arose in plaintiff's favor.

3. JOINT ADVENTURE—EVIDENCE.—In a suit to recover an excessive
   payment alleged to have been fraudulently procured by defend-
   ant, based on an alleged contract whereby defendant was to let
   plaintiff have certain land at what it cost defendant, evidence
   *held* to support a judgment for defendant.

Appeal from Little River Chancery Court; *James
D. Shaver,* Chancellor; affirmed.

STATEMENT OF FACTS.

W. I. Pumphrey brought this suit in equity against
Nathan Furlow to recover the sum of $1,044.32 which he
alleges he was fraudulently induced to overpay the de-
fendant for the purchase price of a tract of land and to
have said amount declared a lien on the land.

The defendant filed an answer denying all the mate-
rial allegations of the complaint.

According to the testimony of W. I. Pumphrey, he
was a negro sixty-four years of age and had lived in
Little River County, Arkansas, for thirty-one years, dur-
ing which time he had been farming and teaching school.
He lived near the defendant, Furlow, and had known
him since the latter's boyhood. Furlow was a white man
and Pumphrey had the utmost confidence in him. In
the summer of 1917, Pumphrey made an oral agreement

with the defendant to buy a tract of land containing 174.71 acres. He went to see the defendant and asked him what the land could be bought for. The defendant stated that he did not know the price, and, after some discussion about the land, agreed with Pumphrey that they would buy it together. Because Pumphrey was a negro, Furlow concluded the negotiations for the land with the owner, who lived at another place in Arkansas. It was agreed between the parties that Furlow should buy the land for any price he could get it for up to $25 per acre. Furlow was to take the contract in his own name and subsequently to let Pumphrey have part of the land at what Furlow had agreed to pay for it. Furlow reported to Pumphrey that he had to pay the $25 an acre for the land, when as a matter of fact he had bought it for $15 an acre. A survey was made of the land and it was agreed between them that Pumphrey should take 101.71 acres at $25 an acre. A written contract between the parties was entered into to that effect. It was understood that the defendant should keep the remainder of the land. Each party entered into possession of his part of the land. Furlow bought the land on a credit and the amount allotted to Pumphrey at $25 an acre paid the whole purchase price, except a small amount which Furlow paid in the beginning. Pumphrey paid for the land with two bank checks given Furlow during the fall of 1917. At the time the bank cashier offered to lend Furlow the money with which to pay for his part of the land and they acted like they were fixing up a mortgage. Again Pumphrey stated that Furlow promised to sell his part of the land to him for just what it cost him.

Austin Hall, another negro who had lived on Furlow's place for about eight years, was a witness for the plaintiff. According to his testimony he had known both parties about twenty-five years and had worked for the defendant for about eight years. In the latter part of the summer of that year, he heard a conversation between the plaintiff and defendant about the purchase of some land near them. The defendant first asked the

plaintiff to go and see the owners about the purchase of the land. The plaintiff suggested that he was a negro and that it would be better for the defendant to go and make the purchase. The defendant said he was satisfied they could get it for $25 an acre; but that he would get it as cheap as he could. The plaintiff agreed that he would pay as much as $25 an acre for a part of,the land. We quote from the record a part of the testimony of the witness, A. Hall, as follows:

"Q. Then you understand that they were partners in buying the land and Furlow had authority to act for both?

A. Yes, sir.

Q. Did you hear Pumphrey explain that in terms of that character that he would intrust him with handling the deal?

A. Yes, sir.

Q. They were both to pay the same price per acre for the land, was that the way?

A. Well, that has kinder slipped my memory. I know of the partnership and that is about all I remember.

W. I. Pumphrey: That is why you were called in the conversation. He said 'I will let you have the land for the same price I pay for it.'

Q. Do you remember any other discussion as to what the land would cost, that each of them was to pay the same price for it?

A. Yes, sir.

Q. And that was why you were called?

A. Yes, sir; I said he was all right. We have been working together for eight years and I said I believe you are all right myself.

Q. That is what you were called for as a witness when they were discussing that and you vouched for both of them?

A. Yes, sir."

The defendant, Furlow, was a witness for himself. He denied that he agreed to buy the land as cheap as

he could and sell part of it to Pumphrey. According to his testimony he was on a contract for the purchase of the land on September 10, 1917. After he had made the contract for the purchase of the land he had it surveyed and on October 6, 1917, he entered into a written contract to sell Pumphrey 101.71 acres for the price of $25 an acre. According to Furlow's testimony Pumphrey urged him to buy the land and told him that he would pay him as much as $25 per acre for one hundred acres of it. Pumphrey wanted Furlow to buy the land be-. cause he thought he could make a better trade for it. Furlow never agreed to let Pumphrey have any part of the land for what he paid for it. It was understood between them that Pumphrey was to give him $25 for the land. Furlow bought it for $15 an acre and made the trade entirely on his own account. Subsequently when he found out that Pumphrey was dissatisfied with the trade, he offered to take it off of his hands and to pay him a good profit. The lands began to rise in value shortly after Furlow purchased them.

E. C. Payne, the cashier of the bank through which Pumphrey paid for the land denied that he and Furlow acted as if they were fixing up a mortgage on the land to secure Furlow's part of the purchase money. He stated positively that there was no effort on his part to do anything of that kind and that he could not recall any conversation which tended to show that fact. He admitted that Furlow had suggested to him that he did not want Pumphrey to know what he had paid for the land.

J. E. Davis testified that he bought some timber from Pumphrey off of the part of the land which Furlow sold to Pumphrey. He said that Pumphrey told him that he did not know what trade Furlow had made for the purchase of the land.

Other testimony will be stated or referred to in the opinion.

The chancellor found the issues in favor of the defendant and dismissed the plaintiff's complaint for want of equity. The plaintiff has appealed.

*A. D. Dulaney, A. P. Steel* and *John J. Dulaney,* for appellant.

1. Plaintiff and defendant entered into a partnership agreement to buy the entire tract of land. A partnership relation existed by operation of law. 107 Ark. 369; 20 R. C. L. 1072; 80 Ark. 29. The intention of the parties governs the question of partnership. 87 Ark. 412; 74 *Id.* 437; 44 *Id.* 423; 93 *Id.* 526.

2. The preponderance of the evidence shows that defendant agreed to sell the plaintiff a portion of the land at the cost price per acre.

3. Defendant was guilty of fraudulent misrepresentation and deceit from beginning to end of the transaction. Fraud was clearly shown.

4. A resulting trust arose in plaintiff's favor. 101 Ark. 456; 19 *Id.* 48; 20 *Id.* 272. It may be proved by parol. 40 *Id.* 62. See, also, 92 *Id.* 55; 114 *Id.* 139.

5. The finding of the chancellor was against the clear preponderance of the testimony. 102 Ark. 383; 75 *Id.* 72.

*S. C. Reynolds,* for appellee.

1. There was no partnership. 32 Cyc. 362; 80 Ark. 25; 145 U. S. 611; 8 H. L. C. 306; 24 W. Va. 441; 40 Am. Rep. 252; 30 Cyc. 366 and notes, 367, notes. Shumaker on Partnership (2 ed.) 25; 82 Mo. 385; 76 N. Y. 344; 80 Mo. 350; 30 Cyc. 366 and notes.

2. The evidence sustains the finding of the chancellor and the burden was on appellant. No fraud or deceit was shown. There might have been a misunderstanding as to the price of the land, but the decree is right and is sustained by the law the evidence. 4 Ark. 251; 17 *Id.* 78; 13 C. J. 263.

HART, J. (after stating the facts). Counsel for the plaintiff first insists that a partnership existed between the plaintiff and defendant with regard to the lands. There is nothing in the testimony to establish this fact. It was a mere conclusion on plaintiff's part suggested

by the question asked him. The testimony of the parties to this suit shows conclusively that no partnership existed between them. According to Pumphrey's own testimony Furlow was to buy the land and was to let him have a part of it at the price he paid for it. There was no agreement to hold the land and sell it and share the profits and losses arising from the transaction. There was no community of interest whatever between them. In order to constitute a partnership, it is necessary that there should be something more than a joint ownership of the property. There was no agreement to buy the lands for the purpose of resale, sharing equally in the expenses and profits as was the case in *Beebe* v. *Olentine,* 97 Ark. 390. Hence they were not partners in fact nor in law.

Again it was contended by counsel for the plaintiff that under the facts a resale trust arose in favor of the plaintiff. We can not agree with counsel in this contention. In *Red Bud Realty Co.* v. *South,* 96 Ark. 281, it was held that a resulting trust did not arise where a trustee purchased property solely upon his own credit and subsequently paid for it with trust funds. In order to constitute a resulting trust, the purchase money must be paid by another, or secured by another at the same time, or previously to the purchase and must be a part of that transaction. The trust must arise by virtue of the purchase and as none was created at that time, none can arise afterward. In order to create a resulting trust in favor of one who pays the purchase money for property bought in the name of another the payment must be contemporary with the trust and not afterward. Hence according to Pumphrey's own testimony the purchase money was paid by him sometime after the contract of purchase was made. Hence no resulting trust arose in his favor.

Finally it is insisted that Pumphrey and Furlow entered into an oral agreement whereby the latter was to buy the tract of land and let the former have a part of it at the price originally paid for it; and that this con-

tract was executed by Furlow purchasing the land and at a later date entering into a written contract with Pumphrey to sell him a part of it at $25 per acre, when in truth and in fact Furlow had bought it for $15 per acre. Even if it be held that this entitled Pumphrey to an abatement of the purchase price, it can not be said that the decree of the chancellor should be reversed; nor can it be said that the finding of the chancellor in favor of the defendant is against the preponderance of the evidence. The testimony of the parties to this suit is in direct and irreconcilable conflict. Pumphrey stated in positive terms that it was understood between him and Furlow that Furlow should buy the land and let him have a part of it at the original purchase price. On the other hand, Furlow is equally positive that no such agreement was made between him and Pumphrey. He stated that Pumphrey agreed to give him as much as $25 an acre for a part of the land in order to induce him to go and make a trade for the land. He admits that he bought the land for $15 an acre, but denies in most positive terms that he agreed to let Pumphrey have a part of it at that price. According to his testimony, it was understood in advance that Pumphrey was to pay him $25 an acre for the land and that Pumphrey actually agreed to pay that price at the time their written contract was executed.

It is insisted by counsel for the plaintiff that the plaintiff's testimony is strongly corroborated by the witness A. Hall. We do not think so. In the first place, Hall admitted that he did not like Furlow, and when his whole testimony is examined in the record, it shows that he simply answered yes to direct questions propounded to him. On cross-examination he showed that he did not know much about the matter, or at least did not understand it. He admitted that the transaction had slipped his memory.

Again, it is insisted that the testimony of the plaintiff is corroborated by the cashier of the bank, because he admitted that Furlow had told him that he did not

want Pumphrey to know what he had paid for the land. This does not tend to corroborate the plaintiff's testimony. It may be that Furlow did not want Pumphrey to know what he gave for the land for fear that Pumphrey would not carry out his agreement to purchase a part of it for $25 an acre. It will be remembered that their agreement in the beginning was a verbal one. Then too, according to Pumphrey, when he paid for his part of the land, the cashier of the bank and Furlow acted as if they were drawing up a mortgage in favor of the bank for Furlow's part of the purchase money. Both the cashier of the bank and Furlow denied that anything of this kind occurred.

Again it is contended that the fact that Furlow withheld his contract from the record tended to corroborate the testimony of Pumphrey. We do not think so. There is nothing to indicate that it was withheld for that purpose. On the other hand, as soon as Pumphrey asked for the contract, it was delivered to him.

The evidence of Furlow is corroborated to a certain extent by that of Davis, who bought some timber from Pumphrey on the part of the land allotted to him. Davis said that at the time he bought the timber Pumphrey told him that he did not know what Furlow had paid for the land. This tends to corroborate the testimony of Furlow.

It follows that the decree will be affirmed.

WOOD, J., dissents, holding with appellant on the last proposition, towit: that appellant and appellee entered into an oral agreement whereby appellee was to buy the tract of land, and let appellant have a portion of it at the same price that appellee paid for it per acre. The finding of the trial court on this issue is clearly against the preponderance of the evidence.