CASTLEBERRY v. CASTLEBERRY.

4-6443                                                    155 S. W. 2d 44

Opinion delivered October 27, 1941.

*D. A. Bradham* and *Aubert Martin,* for appellant.

*Golden, Golden & Gibson,* for appellee.

HOLT, J.   In 1898, Mr. and Mrs. Castleberry, parents of nine children, lived in Bradley county, Arkansas.   Mr. Castleberry died May 21, 1898, and his wife on February

12, 1899. At the time these parents died their three oldest children had become of age, married, and had moved away. Of the six remaining children, E. N. Castleberry was about 24 years of age; B. F. Castleberry, 20; R. D. Castleberry, 16; H. F. Castleberry, 10; Nettie Castleberry, eight; and Nona Castleberry (now Mrs. Bowman), about six. When Mr. and Mrs. Castleberry died they were living on rented land and owned no property.

E. N. Castleberry was living away from home with an uncle when his mother died, and the only property that he owned at the time was one horse of the value of $50. With this horse as a down payment, February 2, 1901, he purchased 40 acres of land, and complying with a request of his mother, made shortly before her death, took the five minor children to his home on this 40-acre tract. March 12, 1902, E. N. Castleberry purchased an additional tract of 160 acres for a consideration of $320 and took the deed in his own name, and during this time he homesteaded 160 acres of additional land. January 14, 1905, E. N. Castleberry purchased a 128-acre tract for $1,000. On October 26, 1907, he acquired 78 acres for $234, taking all deeds in his own name.

R. D. Castleberry married and on March 12, 1908, E. N. Castleberry deeded to him the 78 acres of land, *supra,* the deed reciting a consideration of $200. In 1909, B. F. Castleberry, married and E. N. Castleberry deeded to him 79¼ acres out of the 128-acre tract, *supra,* the deed reciting a consideration of $200. These two brothers, after their marriage, left the home of their brother, E. N. Castleberry, and made their homes on the property which he had deeded to them. In 1912, H. F. Castleberry (one of the appellees here) married and settled on 160 acres of land deeded to him by E. N. Castleberry.

December 30, 1912, E. N. Castleberry married the present Mrs. Dora Sweeney (one of the appellants here) and to this union one child was born, Arthur Castleberry, the other appellant here. Shortly after his marriage E. N. Castleberry contracted tuberculosis, from which he died December 2, 1916. At the time E. N. Castleberry married the only child living at his home was his sister, Nettie (one of the appellees), who was then of full age.

Before E. N. Castleberry died, Nettie had left his home and was living with one of her sisters.

Of the various tracts of land acquired in the name of E. N. Castleberry, subsequent to the date his minor brothers and sisters came to live with him, after the death of their mother, E. N. Castleberry and his wife, November 23, 1915, conveyed 40 acres to L. H. Grider and on the same date another 40 acres to M. P. Grider. January 5, 1914, they conveyed 40 acres to Emma Nelson.

The plaintiffs in this litigation (appellees here) are H. F. Castleberry, Nettie Castleberry and Mrs. N. C. Bowman. The appellants (defendants below) are Arthur Castleberry, Mrs. Dora Sweeney, his mother, and her husband, Pete Sweeney.

The 80-acre tract involved here was obtained by E. N. Castleberry by warranty deed dated March 12, 1902, at which time the oldest of the appellees here was about 12 years of age and the other two, ten and eight, respectively. The 50-acre tract involved was acquired by E. N. Castleberry by warranty deed January 14, 1905, from T. D. Wardlaw and his wife, who conveyed to him 128¼ acres for $1,000, out of which tract E. N. Castleberry on March 12, 1908, conveyed 79¼ acres to his brother, B. F. Castleberry. The 40-acre tract involved here was conveyed by warranty deed to E. N. Castleberry by R. D. Castleberry for $350, November 23, 1915, and was one of the two forties E. N. Castleberry had deeded to R. D. Castleberry March 12, 1908.

The purpose of the complaint was to establish a resulting trust to an undivided one-fourth interest in the lands involved in favor of each of the appellees and prayed for partition accordingly. Among other things, the complaint alleges:

"That the plaintiffs, H. F. Castleberry, Nettie Castleberry, and Mrs. Nona Bowman, were brothers and sisters of E. N. Castleberry, deceased, who died in December, 1917; that all of these plaintiffs, together with R. D. Castleberry and B. F. Castleberry, were in 1901, 1902, 1905 and 1907, orphans and minors and their older brother, E. N. Castleberry, was of legal age and had the full custody and care of these plaintiffs, together

with the said R. D. Castleberry and B. F. Castleberry. That plaintiffs and the said R. D. Castleberry and B. F. Castleberry and the said E. N. Castleberry, were farmers and through the management of the said E. N. Castleberry, and the labor and efforts of these plaintiffs, they jointly accumulated enough money to and did purchase the following described lands: . . .

"That all of said lands were purchased by the said E. N. Castleberry with trust funds, earned by the said plaintiffs, the said E. N. Castleberry, the said R. D. Castleberry, and the said B. F. Castleberry and at the time the funds were so created and said lands purchased with said funds, it was agreed by and between all parties hereto that said lands should be held in trust by the said E. N. Castleberry for each of said plaintiffs, the said R. D. Castleberry and B. F. Castleberry, and the same is and does now constitute a resulting trust in favor of these plaintiffs for their equal share in said lands. . . ."

The complaint further alleges that E. N. Castleberry agreed to convey to each of the appellees an equal share in the lands when they became of legal age and that on March 12, 1908, in compliance with said agreement he had conveyed to R. D. Castleberry 78 acres and to B. F. Castleberry, 79¼ acres; that on November 23, 1915, for a consideration of $500, E. N. Castleberry conveyed 40 acres to Harvey Grider and for a like consideration 40 acres to M. P. Grider, and on January 5, 1914, for $200 conveyed 40 acres to Emma Nelson (all lands being described in the complaint).

It is further alleged that out of the funds received from the sale of the lands to the Griders and Emma Nelson, E. N. Castleberry used $350 to purchase 40 acres of land from R. D. Castleberry; that when E. N. Castleberry died in December, 1917, he held naked title to the balance of said lands in trust for himself and the three appellees here, said lands all in Bradley county, Arkansas, being described as follows:

"West half of the southeast quarter (W½ of SE¼) of section 30; the southeast quarter of the southeast quarter (SE¼ of SE¼) of section 30; northeast quarter of the northeast quarter (NE¼ of NE¼) of section

31; and all that part of the southeast quarter of the northeast quarter (SE¼ of NE¼) lying west or north of the Warren and Moro Bay Road in section 31, township thirteen (13) south, range ten (10) west.''

Appellants demurred generally and specifically to the complaint. The court overruled the demurrer and appellants (defendants below) answered denying every material allegation in the complaint and pleaded as a defense: the statute of limitations, laches, and the statute of frauds.

Upon a trial the court sustained appellees' contention that a resulting trust was created and ordered partition of the lands involved, one-fourth to each of the three appellees and one-fourth to appellants, and entered a decree accordingly. Appellants have appealed.

Appellees base their right of recovery on the ground that a preponderance of the testimony establishes a trust, or more specifically, a resulting trust in their favor. Appellants on the other hand, contend that no resulting trust, or trust relationship, ever existed, and that none was established. Appellants further insist that even though a trust did exist, appellees, at the time they filed their suit, were barred by the statute of limitations and laches.

The material facts upon which appellees seek to establish a resulting trust, or a trust relationship, are not in dispute and are (briefly stated): Shortly before Mrs. Castleberry, the mother of these appellees, died in 1899, she called E. N. Castleberry to her bedside. He was at the time 24 years of age and unmarried. The mother, according to the testimony of appellee, H. F. Castleberry, made the following request of E. N. Castleberry: ''. . . She told him that if there wasn't some one there with us, we would scatter and have no place at all. And she told him to come on home and take care of us children. And he promised that he would and he did.'' Shortly after the mother's death, E. N. Castleberry, as we have before related, gathered the five minor children on the 40 acres which he had bought, making the initial payment with $50, the value of a horse which he owned. The parents of these children left no prop-

erty. At the time appellees were taken into the home of E. N. Castleberry, the oldest was ten years of age and the youngest six. None of these minor children had any property at all. E. N. Castleberry sheltered, clothed, and fed them and while they were not in school they worked and assisted E. N. Castleberry with their labor.

If a resulting trust were established it must have been made out at the time that relationship was entered into. Appellees insist that this trust relationship was established at the time these minor children were taken into the home of E. N. Castleberry by an oral agreement made among them. On this point we quote from the testimony of H. F. Castleberry (who was ten years of age when his mother died): "Q. When did you have this agreement—about all of your living together and later you would divide the lands? A. It was at the time they bought the first 40 acres of land. We were all living together and decided we would all work and buy the land and then Ed said we would divide the lands."

And Mrs. Mollie Hamaker, the oldest sister who lived with E. N. Castleberry and the children until the fall of 1900, testified: "Q. Do you know anything about an agreement between E. N. Castleberry and his younger brothers and sisters at the time they started keeping house together? A. We all lived together as though mother was in the house with us. We were all to work together and to help make a living and then we would share equally in anything that was made."

And R. D. Castleberry (sixteen years of age at the time of the alleged agreement) testified: "Q. State in a very few words just what happened after the death of your mother? A. Mother wanted Ed to take care of the smaller children and he told her he would and he told us children if we would work anything we made we would all share alike."

There was other testimony to the same effect. We are clearly of the view that no resulting trust has been or could be established on the evidence presented by this record.

The law is well settled that in order to create a resulting trust, the purchase money or some part must be paid

by another or secured by another previous to or at the time of the purchase. Here at the time of the alleged agreement, no money was put up or secured by any of the parties here with which to purchase any lands, except E. N. Castleberry who owned a horse of the value of $50. None of the other parties to the alleged agreement had any property whatever. We think that the most that can be said of the relationship here is that the parties agreed to live together, work, make a living, bargain for, and acquire lands, to be paid for out of their joint earnings, which we think falls far short of establishing a resulting trust.

A resulting trust has been defined by this court in *Kerby* v. *Feild,* 183 Ark. 714, 38 S. W. 2d 308, as follows: "In order to constitute a resulting trust, the purchase money or a specified part of it must have been paid by another or secured by another at the same time, or previously to the purchase, and must be a part of the transaction. In other words, the trust results from the original transaction at the time it takes place and at no other time, and it is founded upon the actual payment of money and upon no other ground. *Red Bud Realty Co.* v. *South,* 96 Ark. 281, 131 S. W. 340; and *Reeves* v. *Reeves,* 165 Ark. 505, 264 S. W. 979. This rule is so well settled in this state that no further citation of authorities to support it or reasons for its adoption need be discussed."

And in the recent case of *Lisko* v. *Hicks,* 195 Ark. 705, 114 S. W. 2d 9, this court said: "The rule is that a parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a purchaser that he buys for another, without an advance of money by that other, falls within the statute of frauds, and cannot give birth to a resulting trust. *Bland* v. *Talley,* 50 Ark. 71, 6 S. W. 234."

One of our best reasoned cases on the question before us (and many times cited in subsequent opinions of this court) is that of *Bland* v. *Talley,* 50 Ark. 71, 6 S. W. 234, cited in the Lisko-Hicks case, *supra.* In that case the material facts are similar in effect to those presented

here, and the rules of law announced there apply here. There it is said:

"The evidence of a recognition by William H. of his brothers' interest in his purchase goes only to this extent: that he stated to several persons on different occasions, about the time of the purchase and subsequently, that he bought for them as well as himself and that, if they would stay with him and help him pay out the land, they should have an interest in it. What that interest was to be was not mentioned in any of these conversations. The title to real estate ought not to be affected by such loose declarations and equivocal expressions, where the speaker may have meant one thing and the witness may have understood another.

"The plaintiff swore that the three brothers agreed to buy the place and pay for it out of their joint labor on the farm, and when paid for, to own it share and share alike; that the business was to be transacted in the name of William H., he being the only one of the three who was of age, and that their shares were to be conveyed to the younger brothers when they reached their majority. It is not alleged or shown that Frank and John L. paid any definite aliquot part of the purchase money, but only that the proceeds of their labor contributed to its payment.

"Passing over the inherent improbability that a mature man of sound judgment, engaging in an arduous undertaking, should have associated with himself upon equal terms two boys, who could not be of any possible assistance beyond the manual labor they might perform, the story, if true, amounts only to this: That the three agreed to purchase and one furnished all the money and took the title to himself. Now a parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a purchaser that he buys for another, without an advance of money by that other, falls within the statute of frauds and cannot give birth to a resulting trust.

"If the creation of the trust is not manifested by any writing and no fraud has been practiced in obtaining the title, the trust must arise from the payment of

the purchase money and not from any agreement of the parties. . . .

"In *Neal* v. *Neal,* 69 Ind. 419, the complaint alleged that certain land had been purchased by the plaintiff's father, under an agreement with. plaintiff that if the plaintiff would stay with his father and work for him for three years, the plaintiff being then twenty-one years old, the labor performed by the plaintiff should entitle him to one-half of the land; that the plaintiff had performed the labor for. the stipulated period; and that the defendant, with the means acquired by their joint labor, had bought the land, taking title to the whole in himself. It was held, on demurrer, that the contract was presumably by parol, no writing being alleged and that, if so, it was void by the.statute of frauds. It was also held that there was no trust.

"Equity will not decree William H. Talley a trustee, because he used the proceeds of his brothers' labor, with their consent, in paying for the land, under a promise to give them an interest in the land. This would not put them on any higher vantage ground than if they had lent the money to make the payment under a like promise."

No express trust was established for the reason that it was not claimed that the agreement was in writing. Pope's Digest, § 6064.

It is our view, therefore, that no resulting trust, or trust relationship, has been established in favor of appellees and that the chancellor erred in holding otherwise.

We are also of the view that appellees' alleged claims to the property here in question are barred both by laches and the statute of limitations.

The record reflects that the youngest of the appellees here was 21 years of age in 1916 when E. N. Castleberry died. During the four years following E. N. Castleberry's marriage in 1912, up to his death, he sold various tracts of land and bought other land and rendered no accounting whatever to any one, nor were his acts questioned by appellees. At the time of E. N. Castleberry's death in 1916 his son, Arthur Castleberry (one of the appellants), was two years of age. Arthur and his mother continued to live on the property for a few

years then rented it out, sold timber from some of the land, and operated it without any complaint from these appellees until shortly after 1935 when this litigation was commenced. Thus appellees waited nearly twenty years following E. N. Castleberry's death to assert claims to this property. We think they are too late.

In *Veasey* v. *Veasey,* 110 Ark. 389, 162 S. W. 45, this court said: "But even if such a trust were proved, appellants would be barred from asserting any rights to the property by both laches and the statute of limitations. This suit was instituted the second of January, 1912. The deed challenged was executed October 30, 1869. Appellants certainly knew after they became of age that George E. B. Veasey was deeding the land to the heirs as well as to strangers in blood and otherwise using and controlling the same as his own. They knew that he had thus repudiated the trust, if one ever existed; and after having such knowledge they failed for a period of more than seven years to assert any claim to the lands during all of which time George E. B. Veasey was in the adverse possession of the same and exercising acts of ownership over the same entirely inconsistent with any trust relations and wholly antagonistic to the rights of any other person."

The contention is made by appellees that although they were entitled to a division of the property in question on the death of E. N. Castleberry in 1916, at which time the youngest was 21 years of age, yet that an agreement was entered into among appellees whereby E. N. Castleberry's widow (now Mrs. Sweeney) should use, control and enjoy the fruits from the property until her son, Arthur, then two years of age, was educated and that this agreement was known to Mrs. Sweeney and that it tolled the statute of limitations. Mrs. Sweeney denied ever having known of any such agreement. A review of the testimony, however, convinces us that if appellees so agreed among themselves Mrs. Sweeney did not enter into such an agreement and had no knowledge of it. At least the great preponderance of the testimony is to this effect. Certainly it cannot be seriously contended that appellant, Mrs. Dora Sweeney, the then wife of E. N.

Castleberry and mother of Arthur Castleberry, could make any agreement that would be binding upon Arthur, her infant child. At most her interest in the property was only that of dower and homestead while Arthur held the fee. See *Chandler* v. *Neighbors,* 44 Ark. 479.

For the errors indicated, the decree is reversed and the cause remanded with directions to dismiss appellees' complaint for want of equity and enter a decree in conformity with this opinion.