WARGO *v.* WARGO.

5-873 289 S. W. 2d 879

Opinion delivered March 12, 1956.

 

*Rose, Meek, House, Barron & Nash,* for appellant.

*James M. Smith, E. E. Hopson, Jr.,* and *DuVal L. Purkins,* for appellee.

Lee Seamster, Chief Justice. This is an appeal from a decree of the Desha Chancery Court, which dismissed the appellants' complaint.

On December 11, 1952 the appellants, Percy Wargo and Andrew Wargo, Jr., filed this suit against their brother, Timothy Wargo, his wife and their mother, Victoria Wargo. Mrs. Victoria Wargo is the widow of Andrew Wargo, Sr., and the appellants and Timothy Wargo are the sons and only heirs at law of Andy Wargo, Sr., deceased.

The appellants in their complaint allege that they are the owners, in possession and that they have held such possession adversely for more than seven years of six separate designated tracts of real estate, located in Desha County, Arkansas. They also claim that they are entitled to have their title to the lands quieted and confirmed in them. They also allege that they are the owners of certain farm machinery and cattle located on the premises and ask that their title to such personal property be quieted in them.

They further allege that their father, Andrew Wargo, Sr., died June 10, 1952, and that the record title to all of said property was held by him at the time of his death.

On January 1, 1952 the appellants also filed in said court their petition for an injunction against appellee, Timothy Wargo. They alleged that Timothy Wargo had filed a petition in Desha Probate Court to have an instrument in writing probated as the last will and testament of Andrew Wargo, Sr., deceased. A copy of this instrument was attached to the petition and as pointed out therein, the purported will disposed of all the prop-

erty claimed by the appellants in this suit, as well as other property.

They further alleged that if the will was probated it would cast a cloud upon all the property claimed in said suit by the appellants.

The probate and chancery cases were tried before the court and both matters were disposed of on the same date. The two cases are here for decision and the probate case is today decided in a separate opinion.

The appellants contend, for reversal of the trial court's decree, that the appellants acquired title to the land in question by reason of a resulting trust, created by them purchasing the lands in the name of their father, entirely out of money supplied by them. The evidence on the part of the appellants is to the effect that in the fall of 1935, at a time when the appellants were young men in their early twenties, their father made them a proposition. He said, ''If you boys want to stay here and take care of mother and me, clear the rest of this land and take care of the herd of cattle, you can have everything you make above the operating expenses and maintenance of the home.'' The appellants contend that they accepted the proposition and that they have carried it out up until the time of the suit. Their testimony was corroborated by their mother, Victoria Wargo. They contend that they did business in their father's name.

The proof on the other hand is that their father, the deceased, continued to operate his property in the same manner that he had always done. He was the head of the family and if the family needed money he would go to the bank and borrow it on his own note. In other words, he proceeded to finance and supervise the operation of the farm. Over a period from about August, 1936 until the year 1944 the deceased bought each of the six tracts of land claimed by the appellants. The ones he paid cash for, he took a deed in his own name, and wrote a check on his own bank account and paid therefor. Some of the land was bought on credit. He, alone, signed the contracts of purchase, made the down

payment out of his money, and made the other payments by check from his account in the bank, and took the title to the real estate in his own name.

The last tract that he bought, in 1944, he purchased from Mrs. Zellner. He had a law suit about this tract of land in 1948. Two of his sons, Timothy and Percy Wargo, were witnesses in the trial of this case and Mr. Wargo established the fact that he had purchased said land, by a valid contract, from Mrs. Zellner and the court held in his favor.

There is other evidence that, at the time the deceased bought the first tracts of land, he acquired the money to pay therefor, by selling timber from land he owned on an island situated in the Arkansas River. He also sold timber off of the land claimed by the appellants herein, and entered into written contracts and signed timber deeds for the sale of said timber and collected the money therefrom. He also made oil and gas leases on this land during his lifetime and collected the proceeds from said leases.

On September 5, 1946 the deceased made a will, and in that will he gave to his two grandsons, Timothy Wargo, Jr., and Andrew Wargo, III, who are the sons of Timothy Wargo, a 160 acre tract of land in Section 16, which is now claimed by the appellants.

On December 31, 1949 the deceased made the will that has been probated by the lower court and in that will he gave the grandsons the same tract of land he had given them in the 1946 will, together with a remainder interest in a part of the home place. In the 1949 will he gave to his son, Timothy, land in Section 16 and land in Section 15, the two tracts in said sections which are now claimed by the appellants, in this suit. This suit was filed after the 1949 will was offered for probate. It is evident that the appellants were disappointed in the way their father disposed of his estate by his will.

The appellant, Andrew Wargo, Jr., since the year 1941 had his own separate bank account. He had a herd of cattle that he branded with his own private brand,

which was different from his father's brand, and also different from Timothy's cattle brand, as Timothy also had a separate herd of cattle.

At the time the deceased made his 1949 will he had 388 head of cattle which carried his separate brand. It is generally agreed that the widow, Mrs. Victoria Wargo owned 75 head of these cattle, which she claimed all along belonged to her, even though they carried the same brand as her husband's cattle.

The appellee, Timothy Wargo, built a home in 1935 about 40 feet from the family home, on land belonging to the deceased. He lived in his home, except for a few months during a period of two or three years when he was away hauling logs. From 1941 to 1947 he lived, with his family, in the family home and his youngest son was born while he was living with the rest of the family.

Percy and Andrew Wargo, Jr., have lived in the family home at all times, except for a three year period when Andrew Wargo, Jr., was in the armed services. During that time Timothy looked after Andrew Wargo, Jr.'s, hogs and cattle and from the sale of such stock he deposited $2,000 to Andrew, Jr.'s credit in his separate bank account.

As the family operations expanded the deceased bought additional farm machinery and he bought a bulldozer which he purchased in person and paid for by check out of his bank account, and Timothy also bought considerable farm machinery, two tractors, a corn picker, power saws and other equipment which he used on his property and which was also used on the home place. In fact, the family used each other's property when convenient and they hired considerable help in the operation of the farm. Over a period of some three or four years Timothy Wargo's wife weighed the cotton during the cotton picking season and kept the records for the family at a time when they would have as many as a hundred cotton pickers at one time.

Late in the year 1948 or early 1949 a disagreement arose between Timothy and the appellants, which, in fact,

was very trivial, but has resulted in a further breach by reason of this law suit.

There is no doubt but what the deceased in the provisions of his will attempted to keep the family together. He made a provision for his widow and three sons each to have a life estate in the three acre tract set off for them. This was the land on which his home was built, Timothy's home was built, three barns and other outbuildings and cattle lots were constructed. He also very carefully kept a road open on the farm from his home place and between the lands given to Timothy and to Percy and Andrew, Jr., so that there would always be an open roadway from the home place to all parts of the farm. He gave to the appellants, 1,040 acres of land in a body. He gave to his two grandsons 288 acres of land, 128 acres of which, were subject to a life estate in his widow. He gave to Timothy 447 acres of land, making a connected farm not only of Timothy's tract, but Timothy's children's land was also connected with their father's tract of land.

Among other things, the widow was willed all of the cattle, the land on the island, and all other property the deceased owned and not specifically devised, which included $1,300 worth of stock in a feed mill and a life insurance policy for $2,000. The appellants received all the farm machinery belonging to the deceased, with the exception that Timothy was given a one-third interest in the bulldozer and sawmill, and the right to use the shop-tools in the blacksmith shop.

The deceased, in his will, designated all of this property as his property. Until the time of his death, he assessed all this property in his name, and had personally paid the taxes thereon until the year he died.

The evidence falls short of creating a resulting trust in appellants to any of this land owned by the deceased. Oral testimony of an agreement to create a trust falls within the statute of frauds, and where a trust is not manifested by any writing and no fraud has been practiced in obtaining the title, a resulting trust can only

arise from the payment of the purchase price at the time of the purchase. It can never arise out of an agreement. See *Bland* v. *Talley,* 50 Ark. 71, 6 S. W. 234; *Red Bud Realty Co.* v. *South,* 96 Ark. 281, 131 S. W. 340; *Pumphrey* v. *Furlow,* 144 Ark. 219, 222 S. W. 31, and *Castleberry* v. *Castleberry,* 202 Ark. 1039, 155 S. W. 2d 44.

Since the deceased owned the legal title to all the property involved and the record shows he paid for it out of his own bank account, oral evidence of a separate agreement under such conditions would not be admissible to attach an express trust in favor of the appellants to said land. *Spradling* v. *Spradling,* 101 Ark. 451, 142 S. W. 848.

Oral evidence is admissible to establish even an express trust in personal property. The appellants in this case have failed to show by clear and convincing evidence, the right to have a trust declared in their favor in the personal property owned by the deceased.

It is agreed by all the parties and witnesses that the deceased was a just and honorable man. He was always careful to live up to and meet all of his obligations. He had a great affection for all of his family. He provided, to the best of his ability, and as he saw it, for each and all of them in his will.

Finding no error, the judgment is affirmed.

Justice GEORGE ROSE SMITH not participating.