REEVES v. REEVES.

Opinion delivered October 6, 1924.

TRUSTS—RESULTING TRUST—CREATED HOW.—In order to constitute a resulting trust, the purchase money or a specified part of it must be paid by another, or secured by another at the same time or previously to the purchase, and must be a part of that transaction.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellees brought this suit in equity against appellant to settle the title to two tracts of land and to have partition of the same.

Appellees, A. J. Reeves and Rosie Haller, and appellant, John Reeves, are the children and sole heirs at law of J. L. Reeves, who died intestate many years ago, owning 90.78 acres of land in the Northern District of Ark-

ansas County, Arkansas. The land was his homestead, and his widow and three minor children continued to reside thereon after his death. In the year 1904 his widow, Martha H. Reeves, exchanged the timber on the homestead for forty acres of land adjoining it. The title to the forty-acre tract was taken in the name of Martha H. Reeves; but it was understood that it was to become a part of the estate of J. L. Reeves, and to go to his children after the death of his widow. In other words, it was understood that the forty-acre tract should become a part of the homestead and go to the children after the death of their mother. There were three children, and the object of buying the forty acres was to enlarge the bounds of the homestead so that each child should get about forty acres of land after the death of their mother.

At the time the depositions were taken in this case in 1922, A. J. Reeves was forty-six, Rosie Haller forty-four, and John Reeves was forty years of age. In 1913 Martha H. Reeves conveyed the forty-acre tract to John Reeves, and he has been in possession of it ever since.

It is the contention of appellees that the forty-acre tract was conveyed to John Reeves as his share of the land belonging to his father's estate, and that he had accepted it.

Appellant John Reeves denies this to be the fact, and claims his share in the homestead owned by his father at his death.

The testimony on this point will be stated more at length in the discussion of this branch of the case in the opinion.

After hearing the testimony, the chancellor found that, in the year 1904, Martha H. Reeves, the widow of J. L. Reeves, deceased, with the consent of her children, exchanged the timber on the homestead for forty acres of land adjoining it; that the purpose of the exchange was to provide about forty acres of land for each of her three children at the date of her death; that, in 1913, the mother conveyed the forty-acre tract to John Reeves as

his share of the land owned by his father, and that he went into possession of said forty-acre tract, and has been in possession of it ever since; that A. J. Reeves and Rosie Haller are entitled to have the land which comprised the homestead at the date of the death of their father as their share of his estate, and that John Reeves is entitled to the forty-acre tract as his share of said estate.

A decree was entered in accordance with the finding of the chancellor, and John Reeves has duly prosecuted an appeal to this court.

*M. F. Elms,* for appellant.

The removal and conveyance by Martha H. Reeves of the timber and timber rights on the homestead tract of land, did not constitute her a trustee for the heirs of J. L. Reeves in the purchase of the additional tract; but, if appellees suffered any depreciation in their estate by reason of this transaction, their remedy would be by an action for damages against the estate of Martha H. Reeves for waste committed by removing the timber or making sale of same. 27 R. C. L. 1047, 1050; 95 Ark. 246; 85 Ark. 208. The deed to Martha H. Reeves, and from her to appellant, were both absolute in form. 110 Ark. 389. Appellant's possession and exercise of ownership of this tract of land have been entirely inconsistent with any trust relation. Even if a trust relation ever existed, it was repudiated, and appellees are barred by his adverse possession. 110 Ark. 389; 101 Ark. 230; 103 Ark. 58. It is settled that one co-tenant may hold adversely to the others. 99 Ark. 446; *Id.,* 84; 1 R. C. L. 741, 742.

*John L. Ingram,* for appellees.

The testimony shows a general agreement and understanding among the parties interested, the widow and the heirs at law, that the timber on the homestead was traded for the forty-acre tract, in order to carry out the desire of the mother that the children should have forty acres each. Hers was a life estate only in the homestead, and she could not dispose of it without the con-

sent of the children. 73 Ark. 329; 92 Ark. 261;.63 Ark. 10. Such being the agreement as shown by the testimony, appellant, in accepting a deed to the forty-acre tract, took it as his share of the land.

HART, J., (After stating the facts). In order to constitute a resulting trust, the purchase money or a specified part of it must be paid by another, or secured by another at the same time, or previously to the purchase, and must be a part of that transaction. In short, the trust must arise by virtue of the purchase and not afterwards. *Pumphrey* v. *Furlow,* 144 Ark. 219, and *Brownfield* v. *Bookout,* 147 Ark. 555.

Martha H. Reeves died in 1921, and the complaint in this suit was filed in 1922. A written contract was made on the 23d day of May, 1904, whereby Martha H. Reeves agreed to convey the timber on the homestead which her husband owned at the date of his death, to W. B. Bynum in exchange for forty acres of land owned by him. On the back of the contract appears the signatures of A. J. Reeves and John Reeves, with a notation that they agreed to the contract.

A. J. Reeves and Rosie Haller, his sister, both testified that the timber on the homestead was exchanged by their mother for the forty-acre tract with the consent of all her children, and that the title to the forty-acre tract was taken in the name of the mother; but that it was understood that the forty-acre tract was to become a part of the homestead and go to all three of the children in equal parts after the death of their mother. John Reeves does not contradict this part of their testimony.

The growing trees or timber on the homestead constituted a part of the realty, and the heirs at law of J. L. Reeves, deceased, were necessary parties to a valid conveyance thereof. *Chicago Land & Timber Co.* v. *Dorris,* 139 Ark. 333.

The children and heirs at law of J. L. Reeves, deceased, were parties to the contract, and although, by agreement, the title was taken in the name of the mother, there was a resulting trust in their favor, because the

purchase money was paid by them. It was understood that Martha H. Reeves was exchanging the timber on the homestead for the forty acres of land, and that the forty acres would belong to her husband's estate at her death. In August, 1913, she conveyed the forty acres of land to John Reeves, who took possession of it and has remained in possession of it ever since.

According to the testimony of A. J. Reeves, his mother died at his house on the 2d day of November, 1921. She was eighty-six years of age, and had been partially paralyzed for five or six years. Some time in the month of May preceding her death, she had divided her personal property between her three children, at his house. John Reeves was present. At that time Martha H. Reeves could hardly talk on account of being partially paralyzed. Ed Stokes, who was present and assisting them in the division of the personal property, said to John Reeves: "Isn't it a fact that your mother deeded you the forty-acre tract as your part of the estate?" John nodded his head that she did. He testified further that his mother could not say anything, but nodded her head to give them to understand that she intended for John to have this forty-acre tract as his part of the land.

According to the testimony of Ed Stokes, he was present to assist Mrs. Reeves in the division of her personal property. She first wanted her debts and funeral expenses paid out of her own money in the bank, and the balance to be divided equally among her three children. She did not want any disputes over her personal property. She stated to witness that her husband had died a good many years ago, leaving a fractional eighty acres of land; that she and her children had sold the growing timber on the homestead for forty acres of land; that it was the intention of herself and of all her children that this additional forty acres would give each one of the three children forty acres of land after her death. She further stated that the title to this additional forty acres was vested in her and later conveyed by her to John Reeves. She stated in effect that the conveyance to

John Reeves was accepted by him as his part of the estate; and that John Reeves was present when this conversation was had.

According to the testimony of John Reeves, the forty acres in question were not conveyed to him as his part of the estate, and the conveyance was not so accepted by him. His mother had given to A. J. Reeves and to Rosie Haller other tracts of land, and the forty acres was conveyed to him so that his share might be equal to what had been given them.

They denied this, however. Rosie Haller admitted that she had an additional tract of land, but testified that she had purchased it with her own means, and that her mother had nothing to do with the purchase whatever. A. J. Reeves admitted that his mother had donated a tract of land for him and had paid $10 of the donation fee. He stated, however, that the donation was in the name of his mother, because at the time he was only twenty years of age, and on that account he could not take the donation certificate in his own name. He performed the necessary work and did everything in order to perfect his title and to receive the donation deed.

The chancellor found all the issues of fact in favor of the appellees, and a careful consideration of the evidence in the record leads us to the conclusion that the finding of the chancellor is not contrary to the weight of the evidence. The chancellor expressly found that John Reeves accepted a deed to the forty-acre tract as his part of his father's estate, and that the other two children were entitled to the homestead, which comprised about ninety acres. Under the settled rules of practice in this State, the finding of the chancellor on this point, not being against the weight of the evidence, must be affirmed on appeal.

Again, it is insisted by counsel for appellant that the house on the homestead burned down, and that John Reeves rebuilt it, and also paid the taxes on the homestead and cleared a part of it. Therefore they insist that he is entitled to a lien on the homestead for the amount so expended by him.

On this branch of the case. the. testimony shows that John Reeves resided on the homestead during all of this time with his mother as a member of her family. It was the duty of the life tenant to pay the taxes. The rents were sufficient for this purpose, and also for the purpose of rebuilding the homestead when it burned down. The new home consisted of three rooms, and it only cost about $125 to build it. While the tax receipts were taken in the name of John Reeves, as above stated, he resided with his mother as a member of the family, and, according to the · testimony of A. J. Reeves, the rents on the land were more than sufficient to support his mother in the style in which she lived, and to rebuild the homestead and pay the taxes and make the necessary repairs on the homestead. In fact, he testified that his mother furnished the money to pay for the new home.

It follows that the decree will be affirmed.