BOLDEN *v.* GRAYSON.

Opinion delivered December 22, 1925.

1. MORTGAGES—CONSTRUCTION OF INSTRUMENT.—Whether a particular instrument constitutes a mortgage or a sale with a contract of purchase depends upon the intention of the parties, as shown upon the face of the instrument or as disclosed by extrinsic evidence.

2. MORTGAGES—PAROL EVIDENCE.—Parol evidence is admissible to show that a deed absolute was intended as a mortgage, but such evidence must be clear, satisfactory and convincing.

3. EVIDENCE—DECLARATIONS OF GRANTOR.—Declarations of a grantor as to his interest in the land conveyed by him are admissible against all who claim under him.

4. MORTGAGES—INSUFFICIENCY OF EVIDENCE.—Evidence *held* insufficient to show a deed absolute was intended as a mortgage.

Appeal from Nevada Chancery Court; *C. E. John-son,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellants brought this suit in equity against appellee, and asked that a deed from Missouri Bolden to 120 acres of land to appellee be declared a mortgage, and that they be entitled to redeem said land from said mortgage upon the payment of the mortgage indebtedness. Appellee answered setting up title in himself, and, by way of cross-complaint, asked for possession of said land.

Appellants are the children and sole heirs-at-law of Missouri Bolden, deceased, who died intestate in Nevada County, Arkansas, on January 15, 1923. Walter Bolden was the principal witness for appellants. According to his testimony, his mother, Missouri Bolden, was indebted to P. C. Grayson, and in 1913 gave him a mortgage on a part of the land involved in this suit to secure said indebtedness. He resided on the land with his mother, and she continued to get deeper in debt to Grayson from year to year. On the 27th day of May, 1921, Missouri Bolden executed a deed to P. C. Grayson to the 120 acres of land in question, which is situated in Nevada County, Arkansas. The consideration recited in the deed was the sum of $1,000. The deed was duly acknowledged before J. B. Smith, a notary public, on the same day. P. C. Grayson told Walter Bolden and his mother that the latter was indebted to him in the sum of $1,546.74. He allowed Missouri Bolden to continue in possession of said land, and she resided there at the time of her death. Her husband originally owned the land, and, after his death, the children conveyed the land to her in order that she might mortgage it to obtain supplies with which to run the farm. P. C. Grayson never demanded or received any rent for the place after the execution of said deed. His mother paid the taxes on the land in 1921 and in 1922. Witness has cut and removed from the land about $800 worth of pine timber since the execution of the deed. The witness understood that his mother

was merely executing a mortgage on the property for the purpose of securing her indebtedness to Grayson. The witness was building a house when his mother died, and went to town to see Grayson about a settlement of her indebtedness. Grayson told him to come back the next week. Witness then went on home, and worked on the house until the next week, but he never did get an itemized statement of the account. He heard some talk right after his mother signed the deed to the effect that Grayson claimed title to the land; but Grayson never claimed to him that this was the fact until after his mother's death. On the other hand, Grayson promised to convey the land back to him whenever the indebtedness was paid.

W. W. Drake was a witness for appellants. According to his testimony, the land was worth $20 per acre on the 27th day of May, 1921.

Jones Jack testified that, a year or two before, Grayson had told him that, when appellants paid him, he would surrender the deed and give them both the land. On cross-examination he stated that this conversation between him and Grayson took place three or four years ago. His testimony was given on the 19th day of May, 1923.

P. C. Grayson was the principal witness for himself. According to his testimony, Missouri Bolden traded with him, and her account grew from year to year until, in 1920, he deemed himself insecure. She had been mortgaging the land to him prior to that time. In the fall of 1920 he agreed to give Missouri Bolden $1,000 for the land in controversy, and she agreed to take it. She told him to have a deed prepared and she would execute it when she again came to town. She came back in May, 1921, and told Grayson that she had come to execute the deed. Her son Walter was with her. P. W. Grayson, the brother of P. C. Grayson, was present. The witness did not tell her or her son that he would convey the land back to them when they paid off their indebtedness. Both the witness and Missouri Bolden understood this to be

an absolute sale. She was already on the land, and he agreed to let her stay on the place that year if she would pay the taxes. In the year 1922 Grayson told her that he would let her have the place for that year for $40. She paid the rent for 1922. The land is very low grade for farming purposes, and she never made more than two bales of cotton on it per year. At the time witness obtained the deed to the land it had no value for oil or gas at all. Subsequently, in the spring of 1922, witness sold an oil and gas lease on part of it for $1,900.

L. B. Turley was a witness for appellee. According to his testimony, in May, 1922, he went to see Missouri Bolden to get her to put in a small portion of her farm to aid in drilling a well, and she told him that P. C. Grayson owned the land.

Fred L. Young, a witness for appellee, testified that he went to see Missouri Bolden to obtain an oil lease from her, and that she told him that she had sold the land to P. C. Grayson. Young was the attorney and secretary of the Columbia Oil & Gas Company, and testified that the lease value for oil and gas on this land was very small until about the 15th of October, 1921.

P. W. Grayson, a brother of the defendant, was present when Missouri Bolden agreed to convey the land in question to his brother. He corroborated the testimony of P. C. Grayson in every respect.

J. B. Smith, the notary public who took the acknowledgment, was the cashier of the Bank of Stephens. According to his testimony, he had no personal recollection about the circumstances under which the acknowledgment was taken. He testified unequivocally, however, that he never let a woman sign an instrument without letting her know exactly what it was.

Walter Bolden testified, in rebuttal for appellants, to the effect that his mother did not tell Turley that she had sold the land to Grayson.

Nellie McDowell, one of the appellants, testified that she heard P. C. Grayson tell her mother that he did not want her land, and that all he wanted was his money.

Martin Gulley testified that Grayson told him that, when his indebtedness was paid, he would deed the land back to Missouri Bolden.

C. W. Harrison testified that, while getting up some acreage for oil leases, P. C. Grayson told him that Missouri Bolden had signed a warranty deed to the land under the impression that it was a deed of trust. P. C. Grayson denied that he had any conversation attributed to him in which he stated that he would deed the land back to Missouri Bolden when his debt was paid.

The chancellor found the issues in favor of appellee, and a decree was entered of record in accordance therewith. The case is here on appeal.

*G. R. Haynie,* for appellants.

*Tompkins, McRae & Tompkins,* for appellee.

The finding of the chancellor should not be disturbed on appeal, unless found to be clearly against the preponderance of the evidence. 160 Ark. 516; 157 Ark. 618. The instrument is presumed to be what it purports to be—a deed, and not a mortgage; and, before a court of equity can declare the instrument a mortgage and not a deed, the appellants must meet the burden of showing that it was intended to be a mortgage by evidence that is clear, unequivocal and decisive. 163 Ark. 157.

The declarations of Missouri Bolden against interest were admissible in evidence in this case. 150 Ark. 60.

HART, J., (after stating the facts). It is the settled doctrine of this court that, whether any particular transaction of the kind involved in this suit amounts to a mortgage, or to a sale with a contract to repurchase, must, to a large extent, depend upon its own facts and circumstances. The question turns upon the real intention of the parties as shown upon the face of the deed or as disclosed by extrinsic evidence. In all cases parol evidence may be introduced to show that a deed absolute on its face was intended as a mortgage; but the evidence must be clear, satisfactory and convincing. *Matthews v. Stevens,* 163 Ark. 157, and cases cited. In this connection it may be stated that the declarations of the grantor

as to his interest in the land are admissible against all who claim under him. *Jefferson* v. *Souter,* 150 Ark. 55.

Tested by these well settled principles of law, we do not think that the chancellor erred in holding that appellants had not established their case by clear, satisfactory and convincing evidence. The testimony is in direct and irreconcilable conflict.

Counsel for appellants point out that, while Grayson is corroborated by the testimony of his brother, by virtue of their relationship both are interested parties. The same thing is true of the testimony of Walter Bolden. He is directly interested in the result of the lawsuit, and the record shows that he was the moving party in bringing the suit. It is true that his testimony is corroborated by two or three witnesses, who said that Grayson had told them he had promised to convey the land back to Missouri Bolden and her children when the mortgage indebtedness was paid off. One of these witnesses, however, placed his conversation with Grayson in this respect at a time one or two years before he gave his testimony in his direct examination; but, in his cross-examination, he stated that the conversation had been had three or four years ago. Now this testimony was given in May, 1923, and the deed in question was executed in May, 1921. Thus it will be seen that, in his cross-examination, he laid the time of the conversation with Grayson at a period of time a year or more before the deed in question was executed.

On the other hand, several witnesses for appellee testified that Missouri Bolden had told them that she had conveyed the land to Grayson. She did not die until January 15, 1923, and there was some oil excitement in the neighborhood during the fall of 1922, and leases began to be of some value during that fall. Notwithstanding this fact, Missouri Bolden did not make any claim to the land during her lifetime. The record shows that she was in bad health at the time she executed the deed in question, and that the land had no value at that time for oil and gas leases. The land was of small value for agri-

culture, and it is fairly inferable, from all the facts and circumstances, that Grayson intended to let Missouri Bolden live on the land as long as she would pay the taxes and a small rental for it. The deed was not executed to him until the 27th day of May, 1921, and he agreed to let her stay there that year in consideration that she would pay the taxes on the land. He testified further that he agreed to let her stay there during the year 1922 at a rent of $40, and that she paid the rent in the fall of 1922. His testimony in this respect is not contradicted.

The result of our views is that the finding of fact made by the chancellor is not against the preponderance of the evidence, and the decree will be affirmed.