BAILEY *v.* FRANK.

Opinion delivered March 1, 1926.

1. MORTGAGES—ABSOLUTE DEED—SUFFICIENCY OF EVIDENCE.—Where a deed is absolute in form, the burden of proof is upon one who alleges that it was intended as a mortgage, as the law presumes that an instrument is what it appears on its face to be, and, in the absence of fraud or imposition, the proof to overcome this presumption and establish its character as a mortgage must be clear, unequivocal and convincing.

2. VENDOR AND PURCHASER—OPTION—LOSS OF RIGHT.—The right to purchase under an option is lost by failure to exercise such right within the time designated therein.

Appeal from Arkansas Chancery Court, Southern District; *John M. Elliott,* Chancellor; affirmed.

*T. J. Moher* and *R. D. Rasco,* for appellant.

*John W. Moncrief,* for appellee.

WOOD, J. On the 23d of February, 1918, A. J. Bailey and wife executed to H. G. Frank their promissory note, due one year after date, in the sum of $10,000, and a mortgage to secure the same on 480 acres of land in Arkansas County. On the 10th of September, 1918, Bailey and wife executed to Frank a promissory note in the sum of $1,000, due February 3, 1919, and also a mortgage on the same land to secure the latter note. These notes were not paid at maturity, and on the 4th of August, 1921, Frank instituted an action on the notes and for foreclosure of the mortgages against Bailey and wife. This suit resulted in the foreclosure and a sale of the lands under the decree of the court on April 13, 1922, at which sale Frank became the purchaser, and a deed was executed to him by the commissioner and duly approved and confirmed by the court. On May 11, 1921, before the above action to foreclose was instituted, A. J. Bailey and wife conveyed the lands by warranty deed to their son, J. P. Bailey. After the decree of foreclosure, and the sale and deed thereunder had been approved and confirmed, he instituted an action against Frank, and Bailey and wife, and Fulton, in which he alleged the above facts, and that he had not been made a party

to the foreclosure suit, and prayed that he be allowed to redeem from the sale. Later J. P. Bailey amended his complaint, setting up that he and A. J. Bailey and Mary Bailey, on March 18, 1922, conveyed the lands described in the mortgages by warranty deed to Frank; that these deeds were intended as mortgages to secure the indebtedness of A. J. and Mary Bailey to Frank, which J. P. Bailey had agreed to assume. He set out in his pleadings that Fulton claimed an interest in the property. He prayed that on final hearing the deeds be declared mortgages, and that he have a right to redeem from the sale by payment of the debt, interest and costs.

The defendants answered, and the substance of their defense to the action was that the plaintiff J. P. Bailey, while not originally made a party defendant, had entered his appearance when the report of sale by the commissioner was presented to the chancellor for confirmation, and when the deed was presented for approval, and, by express agreement of the parties, consented that the report of the commissioner be confirmed and his deed approved upon the terms specified and embodied in the decree confirming the commissioner's report and approving his deed. They denied that the deeds mentioned in the complaint were mortgages, but set up that they were executed for the purpose of conveying title to Frank in satisfaction of indebtedness due Frank under the mortgages, and all other indebtedness of the Baileys to Frank. They alleged that, after the execution of these warranty deeds, Frank executed an option giving the Baileys the right to purchase the lands for the consideration of the indebtedness due by the Baileys to him, to be exercised on or before the first day of February, 1923, but that the Baileys had failed to exercise their option. They prayed that the complaints of J. P. Bailey be dismissed.

At a later day Frank filed a complaint to foreclose a chattel mortgage executed by the Baileys to secure Frank for money advanced to enable them to raise and

harvest a crop of rice during the year 1922.   The Baileys answered, admitting the execution of the mortgage, but defended on the ground that the debt secured by the mortgage had been paid.  Still later Frank instituted an action in the circuit court in unlawful detainer against the Baileys, seeking to obtain possession of the lands in controversy.   This action in unlawful detainer was transferred, over the objection of appellant, to the chancery court.   All the causes were consolidated for trial in the chancery court, and were heard upon the pleadings, the depositions and exhibits.   The trial court entered a decree in favor of the defendants, from which is this appeal.

1.   The execution of notes and mortgages by A. J. Bailey and wife, evidencing an indebtedness to H. G. Frank, which on the 26th day of September, 1921, amounted in principal and interest to the sum of $13,349.52, and which that day was past due and unpaid, is an uncontroverted fact.  On that day the chancery court of Arkansas County entered a decree against A. J. and Mary Bailey in the sum of $13,349.52, and directed that the lands described in the mortgages, consisting of 480 acres, be sold to satisfy the indebtedness, and appointed a commissioner to make the sale.   Later, as shown by an order of the chancellor made in vacation, the commissioner reported the sale, and presented for approval his deed made thereunder to H. G. Frank, the purchaser at the sale, which the chancellor found "to be in all respects made and conducted according to law," and entered an order in vacation confirming his report and approving the deed.   The same order shows that Justus P. Bailey appeared in the matter in vacation, and set forth that certain deeds had been executed to Frank to the lands, and that he and others had leased the lands for the year 1922, and asked that they be permitted to occupy the premises during the year 1922, and that no writ of assistance or possession be issued for Frank prior to December 31, 1922, on which day such writ of possession might

issue. The chancellor made the order as requested by Bailey, and concluded the order as follows:

"All the above named parties and persons have appeared herein at this time, and agreed to the hearing of said matter at this time and in vacation, and have consented to the decree above set out, and that this court has jurisdiction of this cause, of the aforesaid property, of all the above-named parties, and jurisdiction to render the foregoing decree." The decree is signed by the chancellor, and also has the O. K.'s of A. J. and Mary B. and Justus P. Bailey.

On the 2d of May, 1921, prior to the institution of the foreclosure proceedings against A. J. and Mary B. Bailey, they had executed a warranty deed to their son, Justus P. Bailey, conveying to him the lands described in the mortgages to Frank, which mortgages were afterwards foreclosed as above mentioned, and J. P. Bailey was not made a party defendant to the foreclosure proceedings.

The above facts are undisputed. J. P. Bailey brought his suit to redeem from the foreclosure sale, claiming that he was not bound by the order of the chancellor made in vacation confirming the sale under the foreclosure decree and approving the commissioner's deed, notwithstanding he appeared before the chancellor and requested that such order be made and signified his consent and approval of the order by his own O. K. and signature thereto. The appellant alleged in his amended complaint, and the fact is undisputed, that on the 18th day of March, 1922, A. J., Mary B. and J. P. Bailey executed a warranty deed to Frank, conveying the lands described in the mortgages, and an additional eighty acres. And on the same day J. P. Bailey executed a separate deed to Frank to the eighty acres that had been described in the deed signed by all of them. These deeds were duly recorded. They recited a consideration of "$1 and other considerations." On the same day that these deeds were executed, Frank executed a lease contract to A. J., Mary B. and J. P. Bailey to the lands

described in the above deeds for the year 1922. This lease recited that Frank leased the lands for the year 1922, and that the Baileys were to pay him one-half of all crops grown on the land during that year as rent. The lease further recited that Frank reserved a lien on all crops purchased upon the lands for any money or supplies that he might furnish the Baileys during the year 1922. This lease contract was signed by Frank and the Baileys. There is in the record what is designated as "an option to purchase" which recites as follows:

"Original. This agreement made and entered into at DeWitt, Arkansas, on this the——day of——, 1922, by and between H. G. Frank, first party, and Mary B. Bailey, second party, witnesseth: First party hereby gives to the second party an option, upon the condition hereinafter named, to purchase the following lands situate in the Southern District of Arkansas County, Arkansas, to-wit:" (Here follows land description). "Said second party may purchase the above described lands from the first party by paying to the first party the sum of $—— not later than February 1, 1923. If second party exercises this option to purchase this land, she shall pay to first party the above-named sum of money on or before the 1st day of March, 1923, and upon the payment of said sum first party agrees to execute to second party a deed to said land. But if second party exercises this option to purchase said land she shall pay in addition to the above sum the 1922 taxes on said land, to be paid in 1923, including taxes of all kinds and improvements, assessments and benefits against same. Given under our hands this——day of——, 1922. (Signed) H. G. Frank.

Copy. "This agreement made and entered into at DeWitt, Arkansas, on this the——day of——, 1922, by and between H. G. Frank, first party, and Mary B. Bailey, second party, witnesseth: First party hereby gives to the second party an option, upon the conditions hereinafter named, to purchase the following lands, situate in the Southern District of Arkansas County, Arkan-

sas, to-wit:'' (Here follows land description). ''Said second party may purchase the above described lands from first party by paying to first party the sum of $—— not later than March 1, 1923. If the second party exercises this option to purchase this land she shall pay to first party the above named sum of money on or before the first day of February, 1923, and upon the payment of said sum first party agrees to execute to second party a deed to said land. But if second party exercises this option to purchase said land she shall pay, in addition to the above sum, the 1922 taxes on said land, to be paid in 1923, including taxes of all kinds and improvement assessments and benefits against same. Given, under our hands this the ——day of——, 1922. (Signed) Henry G. Frank.''

J. P. Bailey, in his action to redeem, alleges and contends that the above deeds and instruments were executed pursuant to an agreement between him and Frank, whereby J. P. Bailey assumed the mortgage indebtedness of A. J. and Mary B. Bailey to H. G. Frank, and was given until March 1, 1923, in which to pay the same; and that, before the time agreed upon had expired, he had tendered the amount of the indebtedness due on the mortgages up to March 1, 1923, which Frank had refused to accept. On the other hand, in defense of the action to redeem, it is alleged and contended by Frank that these deeds are what they purport on their face to be, that is, absolute conveyances of the lands in controversy. And Frank contends they were executed upon consideration of all the indebtedness that might be due from the Baileys to him on or before February 1, 1923.

Thus this record of nearly four hundred pages, in the final analysis, presents the issue of whether or not the deeds above mentioned were intended by the parties as mortgages, and, if not mortgages, whether Frank had given the Baileys an option to purchase the land from him in consideration of the payment of the indebtedness due him by the Baileys by the first of March, 1923. These were purely issues of fact, upon which the testimony

adduced by the respective parties is exceedingly voluminous. The testimony of the Baileys was to the effect that the deeds mentioned were for the purpose of giving J. P. Bailey an opportunity to redeem the land from the foreclosure proceedings. J. P. Bailey himself testified concerning this as follows: ''Well, this deed was given at the time, at the request of Mr. Frank, that we would be given a chance to redeem this land from the foreclosure proceedings that had been filed against father and mother. At the time this deed was executed we had an agreement to redeem this land, and the agreement was made in Mr. Moncrief's office. Mr. Frank, A. J. Bailey and witness were present when this agreement was made. It was agreed that this land should be deeded to Frank, and he would give us to March 1, 1923, to redeem this land and pay him in full what we owed him.'' Witness had in mind at the time of the execution of the deed ''the redemption of the land.'' Witness further states that the agreement at the time was that witness was to have until March 1, 1923, to redeem, and before that time in February, 1923, he offered to pay Frank and Fulton the amount of the Baileys' indebtedness to Frank. ''The consideration for the execution of the deed was the right to redeem the land.''

A. J. Bailey testified in substance that they deeded the property to Frank upon the understanding that he would give them a contract to protect their interest. They wanted to protect Frank for all the money they owed him, and he was to give the Baileys a lease for the year 1922, and take a landlord's lien, and so they agreed to that proposition, and executed the deeds. It was understood at the time that Moncrief would draw up a contract stating what the Baileys' rights were, and how much they would have to pay to have the property deeded back. There was never any question but that the property would be deeded back. The agreement was that ''upon the payment of Frank's full claim, and we didn't know what that would be, but upon the payment of his full indebtedness that we owed him, the decree and what

money he would advance us, he would deed the property back to us.'' Witness further testified to the effect that the understanding was at the time the deeds were executed that, when the indebtedness of the Baileys to Frank was paid, he would deed the land back to them, and Moncrief said he would draw up a contract that would protect their interests, and they took his word for it. Witness never saw any option contract nor heard any conversation about an option. Nothing was said about purchasing the property from Frank. The only words that were used were that he would deed back the property.

On the other hand, the testimony of Frank was to the effect that the Baileys had not been able to pay their indebtedness to him, which had accrued under the original mortgages executed in 1918, and that he had to foreclose the same, which he did in September, 1921, and the lands were ordered to be sold; that the Baileys, in order that they might retain possession of the land, and cultivate the same during the year 1922, executed the deeds in controversy to him, and he, on the same day, executed the lease contract to them; that the understanding was that he would give the Baileys until December 31, 1922, or January 1, 1923, to pay the mortgage indebtedness, and that, if they would pay all the indebtedness due him at that time, he would allow them to purchase from him the property, and he would deed same back to them. This option agreement, pursuant to which the deeds and lease contract were executed, was not reduced to writing and signed the day these latter instruments were executed, because Moncrief said it was too late, and that he would write it another day. On a later day witness and A. J. Bailey went to Moncrief's office, and Moncrief had the option contract written out and presented it to witness. Moncrief had changed the date that had been agreed upon from January 1, 1923, to March 1, 1923. Witness would not agree to that date, but finally did agree with Bailey to extend the time for the option contract to expire to February 1, 1923, and he signed the option contract with that understanding.

Witness stated that the reason why he would not extend the time beyond that date was because he was old, and in ill health and not able to look after it, and he wanted the matter definitely settled by that time, hence he would not agree to an extension of the option to March 1, 1923.

The testimony of Moncrief was to the effect that, at the time the deeds were executed and delivered to Frank, and the lease contract was entered into between. Frank and the Baileys, Frank was to give Bailey an option to purchase the property which was to run during the time of that lease contract. The lease contract did not contain the option to purchase, and the option contract was not written on the day the lease contract was executed. Witness was to prepare, and did prepare, the option contract on a later day at Bailey's request. Bailey requested witness to mention March 1, 1923, as the time for the expiration of the option to purchase, and witness wrote that date in the contract. Bailey was present when the contract was written, but Frank was not. At a later day Frank and Bailey came to witness' office, and witness handed the option contract to Frank and mentioned to him that there had been a change in the date at Bailey's suggestion from December 31, 1922, or January 1, 1923, to March 1, 1923. Frank stated that such was not the agreement, and he refused to sign it. Bailey finally prevailed upon him to agree upon February 1, 1923, and witness thereupon changed the contract, inserting that date with pen and ink and erasing the word March in both the original and copy of the option contract. Witness explained, however, that he hadn't noticed the word March except in one place in the contract, whereas it appeared twice. The failure to erase the word March was an oversight on the part of witness. Witness, in changing the month from March to February in the contract, erased the word March in one place in the original and in another place in the copy, but witness intended to erase the word March in both places where it appeared in the contract, and to insert February in its place. Frank signed the option agreement. The option con-

tract was written in the name of Mary B. Bailey, and she was not in the office at the time, and the agreed purchase price was left blank because the amount of the indebtedness of the Baileys to Frank as of the first of February, 1923, the date fixed for the expiration of the option, was not then ascertained.

It is unnecessary to set forth other testimony in this voluminous record. There was proof to the effect that Frank, after the expiration of February 1, 1923, had entered into a contract to convey the lands to Fulton.

The above are the salient features of the testimony upon which the court predicated its decree dismissing the appellant's complaint for want of equity, and upon which it entered a decree in favor of Franks and Fulton confirming and quieting title in them and awarding them possession of the lands in controversy.

There is no contention in the record that Frank perpetrated a fraud upon the Baileys by which they were induced to execute to him the deeds in controversy. The law applicable to such cases is stated in *Edwards* v. *Bond,* 105 Ark. 314, where we said: "The deed being absolute in form, the burden was upon the appellant to show that it was a mortgage, the law presuming that an instrument is what it appears on its face to be, an absolute conveyance, and, in the absence of fraud or imposition, the proof to overcome this presumption and establish its character as a mortgage must be clear, unequivocal and convincing." See also *Bolden* v. *Grayson,* 167 Ark. 180.

The finding that Frank was the owner of the lands is sustained by a preponderance of the evidence. The oral testimony, when taken in connection with the written instruments, renders it reasonably certain that it was the intention of the parties that the deeds should be absolute in fact, as well as in form. We are also convinced that a preponderance of the evidence shows that it was not contemplated by the appellee, Frank, that the appellants should have beyond the first of February, 1923, to purchase the property by the payment of all the indebtedness due him at that time. In other words, the above

option contract, signed by him, expired on February 1, 1923. The appellant did not, on or before February 1, 1923, pay or offer to pay Frank the amount of all the indebtedness that would be due him at that date. After that date the option contract was dead, and appellants no longer had any rights thereunder. *Ind. & Ark. Lbr. & Mfg. Co.* v. *Pharr,* 82 Ark. 573; *Jennings* v. *Crawford,* 102 Ark. 575.

2. The court below found that a receiver had been appointed to take possession of and sell certain personal property on which Frank had mortgages and liens to secure certain indebtedness, and that the receiver had delivered to Frank the proceeds of such property, and, after crediting all payments on such indebtedness, there was still due Frank the sum of $850 with interest at the rate of six per cent. per annum from the first of February, 1923. The court thereupon entered a decree against Justus P. and A. J. Bailey for that sum. The testimony of Frank, and the exhibits to his testimony, clearly show that the Baileys owed Frank, after allowing them all credits on their account for the year 1922, a sum in excess of $850. It cannot be said therefore that the preponderance of the evidence is clearly against the finding of the court on this issue, and the decree in favor of Frank against the appellants for that sum is correct.

3. It follows, from what we have said as to the decree of the court in the action to redeem, that the court was likewise correct in finding that the Baileys were in wrongful and unlawful possession of all the lands in controversy, including the eighty acres embraced in the separate deed from Justus P. Bailey to Frank, dated March 18, 1922, and ruled correctly in entering its decree awarding the appellees the possession of such lands.

The decree of the court as a whole, on the consolidated causes, is in all things correct, and it is therefore affirmed.