KERBY *v.* FEILD.

Opinion delivered April 6, 1931.

*Carmichael & Hendricks* and *R. P. Taylor*, for appellant.

*J. A. Watkins*, for appellee.

HART, C. J. Appellant prosecutes this appeal to reverse a decree of the chancery court refusing to declare

certain deeds, absolute in form, to be mortgages, and to allow him to redeem from same, and to declare certain tracts of said real estate to be held in trust by appellee for appellant; and also to reverse a decree settling an account between the parties extending over several years.

Appellant became contractor for a road improvement district in Saline County, Arkansas, and appellee became surety on his bond. They had litigation with the road district for the collection of certificates of indebtedness issued by said road district to appellant, which extended over a period of several years. The association between the parties led to the transactions involved in this suit.

A master was appointed to state an account between the parties. Voluminous testimony was taken on both sides, and it would unduly extend the opinion to set it out *in extenso*. For the sake of brevity and of clarity, we shall follow the lines of the brief of appellant and discuss the several transactions separately and shall only set out the substance of the evidence on each point as it impressed us after a careful consideration of the whole matter. Three tracts of real estate are involved in the chancery suit which are termed, respectively, the Cabot farm, the Ferndale Apartments, and the McAlmont place. On the accounting branch of the case, the principal items relate to the road certificates assigned by appellant to appellee, the attorney's fees alleged to be due from appellee to appellant, and charges against appellant for livestock on the Cabot farm.

According to the allegations of the complaint of appellant, in December, 1922, he owed C. W. Watson and the Union Trust Company something over $6,000, on the purchase price of 400 acres of land in Lonoke County, Arkansas. On the 31st day of January, 1922, C. W. Watson and J. P. Kerby executed an agreement relating to this tract of land. The agreement recited that it was conditioned on the setting aside of the order of sale of a bank in St. Louis against Watson and Kerby and the reinstatement of the loan to the bank secured by a mort-

gage on the land. Kerby agreed to give a warranty deed to Watson to the land, and Watson agreed to give Kerby an option to repurchase at any time on or before December 15, 1922, upon the conditions set out in the agreement. The instrument was duly signed and acknowledged on the 31st day of January, 1922. Kerby failed to comply with the terms of the agreement and made a verbal agreement with Watson and Feild for the execution of a deed by the former to the latter which was to be considered as a mortgage for the security of the indebtedness of Kerby. According to the evidence given by Kerby, the rents on the place were worth $1,000 per year. Kerby considered his interest in the farm worth $15,000. Kerby considered that he had complied with the condition of the contract and redeemed the property when he persuaded Feild to pay his indebtedness to Watson and allowed him to receive an absolute deed from Watson. There was a verbal understanding at the time of the execution of the deed from Watson to Feild on December 8, 1922, that Kerby should be allowed to repurchase the land upon the payment of the indebtedness to Watson which had been paid by Feild. Feild was his client, and had financed several deals for him, and Kerby, on that account, had absolute confidence in him. He kept the deed in his possession and never had it recorded. Feild never demanded possession of the deed until about a year ago. Other witnesses testified that at various times they had heard Feild make a statement about Kerby having an interest in the farm.

O. B. Feild was a witness for himself. According to his testimony, Kerby had no interest in the Cabot farm. Kerby interested him in the purchase of the farm from Watson, and it was understood that the deed should be executed from Watson to Feild because Kerby was not able to carry out his contract with Watson. Kerby did not withhold the deed from Watson to Feild from record because he had any interest in the property. Kerby told Feild that he would have the deed recorded, and Feild supposed that he had done so until the present

litigation came up. The Cabot farm was in road district litigation and was heavily assessed for betterments. The taxes, including the betterments, amounted to more than the crops raised on the place were worth.

According to the testimony of C. W. Watson, he conveyed the Cabot farm to Kerby in 1918 or 1919. Early in 1922 he learned that the land was delinquent for taxes, and also that Kerby had failed to pay an installment of interest due to a bank in St. Louis, and that a foreclosure suit was imminent. Watson paid all the taxes, rents, and interest due on the mortgage on the land with the understanding that Kerby would reconvey the land to him. At the same time, he signed a written agreement permitting Kerby to redeem the land, which he failed to do. After Kerby failed to redeem the land, he interested Feild in the matter; and the latter took over all the indebtedness in consideration that Watson should execute a deed to Feild or Kerby, but he recollects that Feild became the owner and was to receive the deed.

Counsel for appellant rely on the case of *Dicken* v. *Simpson*, 117 Ark. 304, 174 S. W. 1154, where it was held that when a deed not absolute on its face and a contract, drawn contemporaneously, when construed together, do not show a sale, the proof, in order to show that a mortgage was intended, need not be as clear and unequivocal as when the deed is absolute on its face. We do not think that case is applicable.

It is not disputed that Watson executed a written contract whereby Kerby was allowed to repurchase or redeem the land by the payment of the indebtedness due on it to Watson in December, 1922.

According to the testimony of Kerby he failed to carry out his contract, and he then entered into a verbal contract whereby Watson was to execute a deed to the land to Feild, and that Feild entered into a verbal agreement with Kerby to allow him to redeem or to repurchase the land upon the payment to Feild of the amount of the indebtedness which Feild had assumed and paid to Watson for Kerby. Appellee testified to the contrary.

Pursuant to this contract, in December, 1922, Watson executed a deed to the land called the Cabot farm to Feild. This calls for an application of the established rule in this State that a court of equity will treat a deed absolute in form as a mortgage when executed for a loan of money or as security for a debt. The court looks beyond the terms of the instrument to the real transaction and will give effect to the actual contract of the parties. The evidence that the instrument was intended only to secure a debt and operate only as a mortgage must be clear, unequivocal and convincing, or the presumption that the instrument is what it purports to be must prevail. Since the equity upon which the court acts arises from the general character of the transaction, any evidence, written or oral, tending to show this, is admissible. *Hays* v. *Emerson,* 75 Ark. 554, 87 S. W. 1027; *Snell* v. *White,* 132 Ark. 349, 200 S. W. 1023; *Nail* v. *Kirby,* 162 Ark. 140, 257 S. W. 735; *Matthews* v. *Stevens,* 163 Ark. 157, 259 S. W. 736; *Bolden* v. *Grayson,* 167 Ark. 180, 266 S. W. 975; and *Bailey* v. *Frank,* 170 Ark. 610, 280 S. W. 663.

Tested by this rule, which is well settled here as elsewhere, we do not think that appellant has established his case with that clear, unequivocal, and convincing testimony that the law requires. Kerby was given every opportunity by Watson to redeem the land before it was conveyed to Feild. It seems that Feild only became interested in the land because of his association with Kerby in other matters, and it does not appear that Kerby ever had or offered to pay him what the undisputed evidence shows that Feild had paid out on the land. Therefore, we think the chancellor was justified in holding against Kerby on what is called the Cabot farm.

The complaint of appellant alleges that on May 24, 1923, he caused to be transferred to Feild three lots in Ferndale Addition to Little Rock, worth $10,000, which were encumbered to the amount of $2,400. The complaint alleges that said property was to be held in trust

for appellant, and that he had the beneficial ownership in it. Feild admitted that the property was conveyed to him, but denied that it was of the value claimed by appellant. He alleges that the revenue of the property has not been sufficient to pay taxes, interest, insurance and upkeep. Appellee further alleges that, if appellant will pay the amount of money which he has expended on the property, he is ready and willing to reconvey it to him.

According to the testimony of Kerby, his equity in the property is worth $7,500. There was an indebtedness of $2,400 against the property, and Feild took over the property for Kerby and borrowed $2,500 to pay on the purchase price. Kerby later made payments on the indebtedness which reduced it to $1,700. He is corroborated by the testimony of George Spencer. The latter testified that he understood at the time the property was conveyed to Feild that he was taking the property over for Kerby. He knew that Kerby and Feild had been closely associated in business for several years.

According to the testimony of Feild, he took over the property for about $2,400 and put out $900 in repairs. He borrowed $2,500 on it. There was no understanding, when he bought the property, that he was buying it for Kerby; and Kerby had never offered to pay him any money that he had put into it. He was solicited to buy the property for a whole year. Spencer had a mortgage on the property; it was a losing proposition. The holders of the mortgage indebtedness had foreclosed their liens on the property.

In order to constitute a resulting trust, the purchase money or a specified part of it must have been paid by another or secured by another at the same time, or previously to the purchase, and must be a part of the transaction. In other words, the trust results from the original transaction at the time it takes place and at no other time, and it is founded upon the actual payment of money and upon no other ground. *Red Bud Realty Co.* v. *South*, 96 Ark. 281, 131 S. W. 340; and *Reeves* v. *Reeves*, 165

Ark. 505, 264 S. W. 979. This rule is so well settled in this State that no further citation of authorities to support it or reasons for its adoption need be discussed.

In the application of it to the facts of this case, it cannot be said that the chancellor erred in holding in favor of appellee.

The testimony to establish a resulting trust must be clear, satisfactory, and convincing. *Stacy* v. *Stacy,* 175 Ark. 763, 300 S. W. 437. There was no part of the purchase money of the Ferndale Apartments paid by appellant before or at the time of the conveyance to appellee. Appellee offered to convey the property to appellant at any time that he would reimburse him for the amount paid for it. This, together with the other circumstances attending the transaction, tended to show that appellee gave full value for it. At any rate, appellant has not offered to comply with the terms upon which he might repurchase the property. No useful purpose would be served by decreeing that the beneficial ownership was in appellant when he is refusing to carry out the terms upon which he claims the beneficial ownership. In other words, he could in no event have the legal title vested in him without reimbursing appellee for the amount paid out for appellant by him in the purchase of the Ferndale Apartments.

The complaint of appellant alleges that on April 18, 1924, he purchased from W. B. Smith certain lands in Pulaski County, known as the McAlmont place, which Feild was to assist in buying. Appellant alleges that the wife of appellee Feild holds this tract of land in trust for appellant. Appellee alleges that he was persuaded by appellant to execute a bond for the purchase money of this tract of land at a foreclosure sale, and that appellant was unable to pay the purchase price. On this account the commissioner's deed was executed to the wife of appellee, and full value was paid for the land. Appellee alleges that he paid $16,000 for the McAlmont place, and that appellant has no interest therein.

According to the testimony of appellant, his equity in the place is worth $4,000. A mortgage was foreclosed on the property which was bid in by the son of appellant. Feild signed the purchase money bond. Later, the title was taken in the name of wife of appellee, and appellee agreed to hold the same in trust for appellant. They had an understanding that the land should be held in trust for appellant. This agreement was a verbal one.

According to the evidence for appellee, the purchase of the McAlmont place in the name of his wife was not for the benefit of appellant. The purchase price has been paid, and appellant has no interest in it. Appellant's son bid in the property at the foreclosure sale, and appellee signed his bond for the purchase money. Appellant and his son were unable to pay the purchase money, and appellee took over the property.

The chancellor found this issue in favor of appellee; and, under the rule announced above, it cannot be said that he erred in so doing. In no sense can it be said that a resulting trust was established by appellant by clear, satisfactory, and convincing evidence.

We now come to the accounting between appellant and appellee which may be divided into three general heads, being amounts claimed by appellant from appellee on road certificates; for attorney's fees; and for the value of live stock charged against appellant on account of the Watson mortgage, which appellant claims should have been charged against appellee.

Appellant claims that on December 15, 1923, he turned over to appellee road improvement district certificates of the par value of $10,894.85, which had been issued to him for construction work by a road district in Saline County. Appellant alleges that these certificates were turned over by him to appellee as collateral security for an indebtedness which appellant owed appellee. Appellee averred that appellant had assigned these certificates to him absolutely for the considera-

tion of $7,915.67. The contract of assignment, which was executed in December, 1923, reads as follows:

"I, J. P. Kerby, * * * for and in consideration of $7,915.67 to me in hand paid by O. B. Feild * * * do by these presents sell, assign and convey to the said O. B. Feild, his heirs and assigns, any and all claims against Road Imp. Dist. No. 4, * * * and am transferring all amounts due or to become due from said Road Imp. Dist. No. 4, Saline County, Ark., to said O. B. Feild in order to secure the above amount in cash or loan. In the event that the said O. B. Feild shall, from any cause fail to collect and receive the above amount assigned, then I give him, his agents or assigns, the right to collect for any amount that may hereafter be due me from said Road Imp. Dist., Saline County, or from any other person, corporation or firm."

According to the testimony of J. P. Kerby, on December 15, 1923, he turned over to appellee, as collateral security, road certificates of the par value of $10,894.85. These road certificates had been issued to him for construction work by a road district in Saline County, Arkansas, and were worth par. It was not the intention of the parties to assign the road certificates absolutely, but they were assigned by appellant to appellee as collateral security for an indebtedness owed by the former to the latter. The assignment was made because Feild was trying to negotiate the certificates, and the assignment would enable him to show his right to do so. On April 18, 1924, before the present litigation began, appellant said that he submitted to appellee an account concerning their business transactions in which he charged him with the road warrants at par and that appellee made no objection to any item in the statement.

According to the testimony of appellee, appellant was indebted to him in an amount of something over $14,000. Appellee had signed the bond of appellant on some road construction work in Saline County, and the indebtedness grew out of appellee signing that bond for

appellant. In part settlement of his indebtedness, appellee agreed with appellant to credit him with $7,915.67 for the $10,894.85 in road certificates. Appellee could not dispose of these road certificates or use them as collateral until they were validated by litigation, which was something over two years later. At the time the certificates were assigned by appellant to appellee, the latter had been trying to negotiate them to third parties. The best price offered was seventy-five cents on the dollar with the indorsement of appellee on the certificates. The agreement whereby the certificates were assigned by appellant to appellee was not intended to be as collateral security, but it was intended to be an absolute assignment. Litigation lasting over a course of several years was pending between the road improvement district and appellant as contractor and appellee as surety on his contractor's bond, and the road district certificates were not regarded of much value until this litigation was determined. Under these circumstances, it cannot be said that the finding of the chancellor in favor of appellee was against the weight of the evidence.

. The oral testimony of the parties did not fall under the ban of the well known rule that parol evidence is not allowed to contradict or vary a written instrument. This rule is only applied when the parol evidence tends to vary or contradict the language used in the instrument. *Pugh* v. *Davis*, 96 U. S. 332. Here the evidence did not tend to vary the language of the written assignment, but only tended to explain the terms of it which were ambiguous. Therefore we hold that there was no reversible error on the part of the chancellor in finding for appellee on this item.

It is next insisted that the court erred in not allowing the appellant attorney's fees in the sum of $8,400.

According to the testimony of appellant, he served appellee as attorney from May, 1920. to July, 1927, and his services were worth $1,200 a year. He testified that appellee for the consideration of $200 had signed his

bond as contractor for the Saline County road district. There were twenty-one cases in the municipal court at Little Rock and two cases in the circuit court growing out of the fact that appellee had signed the bond, and appellant appeared in his defense in all the cases. He did other work in the road litigation which he testified to in detail. Appellant also testified as to other suits in which he appeared for appellee. The testimony of several attorneys was also adduced by appellant in which they stated that they had offices near that of appellant and that, judging from the number of times they saw appellee going in and coming out of appellant's office, his services were well worth $1,200 a year. Appellee was a witness for himself. According to his testimony, he never received any compensation for signing the contractor's bond for appellant, but that he soon became involved in litigation with the road district because he had signed the contractor's bond for appellant. His visits to the offices of appellant were almost daily, but all of them were in the interest of the road litigation which was for the benefit of appellant and incidentally to him because he was surety on the contractor's bond of appellant. He testified that the other legal services performed by appellant for him were in small matters and were of but little value. On this branch of the case, the court allowed attorney's fees to appellant in the sum of $3,545.66. We do not think that it can be said that the chancellor's finding in this respect was against the weight of the evidence. It is true that several attorneys testified that, considering the frequent and almost daily visits of appellee to office of appellant, his services were worth the sum of $1,200 a year, but, when we consider that perhaps all of these visits were in the interest of appellant as principal and appellee merely as surety on his contractor's bond, we do not think that the court erred in allowing appellant as attorney's fees $3,545.66, instead of $8,400, as claimed by him.

It is next insisted that the court erred in charging appellant in stating the account between him and appel-

lee with the value of certain live stock in a chattel mortgage given by appellant to Watson. Here again the testimony of the parties is in irreconcilable conflict. The undisputed evidence shows that there was a mortgage given by appellant to Watson on certain personal property which was on the Cabot farm. According to the testimony of appellant, this personal property was not included in the deed from Watson to appellee and was not to be accounted for by him. On the other hand, according to the testimony of Watson, he never released his mortgage on the personal property on the Cabot farm, and it was intended by him that the personal property included in the mortgage should go to appellant or appellee in the deed to the farm. Watson stated that he did not remember whether he made the deed to appellant or to appellee, but does recollect that the personal property was to be included in the grant of the land. The undisputed evidence shows that the deed was made to appellee, and appellee corroborated the testimony of Watson to the effect that the personal property in the mortgage was to go with the purchase of the land. The chancellor found this issue in favor of appellee, and it can not be said that his finding in this respect is contrary to the preponderance of the evidence.

We have carefully considered the evidence in the case and the findings of the chancellor based upon the exceptions made to the master's report. We are of the opinion that the finding of the chancellor was correct, and the decree will be affirmed.