CHASE *v.* ANDRUS.

4-4221

Opinion delivered March 16, 1936.

*W. O. Young* and *A. L. Smith,* for appellants.

*Alvin Seamster* and *Ben Ware,* for appellee.

MEHAFFY, J. In 1920 W. A. Stewart owned two adjoining tracts of land in Benton County, Arkansas. One tract was free from encumbrance and the other tract was encumbered by a mortgage held by Marion Wasson for the sum of $1,000. There had been a payment of $100 to Wasson. The value of this land was estimated to be $3,000 above the mortgage.

H. C. Andrus, who was 70 years old, owned some property in Muskogee, Oklahoma, valued at $2,000. This was the home of Andrus and wife. W. B. Chase owned two tracts of land near Muskogee, Oklahoma, one of them with a six-room dwelling house on it valued at $2,000, and the other tract was valued at $1,000. Mr. Andrus was the father of Mrs. Chase, wife of W. B. Chase, and Mrs. Andrus was her step-mother.

W. A. Stewart desired to trade his property in Benton County, Arkansas, for property in Oklahoma. An-

drus and wife and Chase and wife came to Arkansas and looked at Stewart's place, and Andrus agreed with Stewart to trade his Oklahoma property for Stewart's property in Arkansas, provided Mrs. Stewart would agree to it. Mrs. Stewart, after looking at the Andrus property, refused to make the trade. In the meantime, Andrus and wife had made a deed to Stewart, and the deed and $500 . was put in escrow. After Mrs. Stewart declined to trade for the Andrus property, Mr. Chase made the proposition to trade his property in Oklahoma for the Stewart property, and this trade was accepted by the Stewarts. The Stewart property was valued at $4,000 and the Chase property at $3,000; that is, the Stewart property, less the encumbrance, was valued at $4,000. Stewart made a deed to Florence Chase, daughter of Andrus, and the amount due on the mortgage at the time it was paid was $985. This amount was paid by Andrus. Andrus and wife and Chase and wife agreed to live together on the place purchased from Stewart. Stewart's personal property was purchased for $1,000. H. C. Andrus died on February 3, 1935.

This suit was begun by appellee April 9, 1935. In her complaint she alleged that in 1921 she and her husband, together with Florence Chase and her husband, W. B. Chase, purchased the 42-acre farm in Benton County, Arkansas, describing it, the deed being made to Florence Chase, wife of W. B. Chase and daughter of H. C. Andrus. The purchase price of the land was $3,000, and the assumption of the mortgage due to Wasson. W. B. Chase purchased the personal property and equipment then on the farm, including livestock and tools, for the sum of $1,000. Appellee alleged that at the time of the purchase she and her husband paid $500 cash, and that the mortgage held by Wasson for $1,000 was paid by her and her husband in June, 1922. The balance of the purchase price of the land and all the purchase price of the personal property was paid by W. B. Chase. It was alleged that the object of the purchase was to provide a joint home for the two families who had never lived together before, and the deed to the land was taken in

the name of the daughter, Florence Chase, as a matter of convenience. W. B. Chase worked the farm, keeping exclusive control of the personal property. H. C. Andrus was a blacksmith and erected a shop near the dwelling house, and earned about $1 a day, which was expended in the general expenses of the two families. She also alleged that she and her husband rented the property in Oklahoma and in the six years this amounted to $1,800, and was used in paying the joint expenses of the families. Appellee owned property in Muskogee which she sold for $1,100, and this was expended for the benefit of all, a part of it being spent in the purchase of an automobile for the joint use of the families; that H. C. Andrus bought and paid for material necessary to build a large barn, a garage and blacksmith shop. They also financed the purchase and setting out of an orchard. They expended $600 in permanent buildings and improvements on the farm; that during their years of plenty, W. B. Chase had free access to their bank account, but in 1928, when their money was exhausted, and H. C. Andrus, being 78 years of age, could no longer earn so large an amount at his blacksmith shop, it became necessary for W. B. Chase to contribute to the family maintenance. Trouble arose at once, and in May, 1930, W. B. Chase and his wife moved to a nearby farm, leaving the old people the use of the house and garden; that W. B. Chase is still working the farm and retains the proceeds for himself; that in 1930, H. C. Andrus made and executed a will bequeathing to his daughter, Florence, $1, and to appellee all his undivided interest in the 42-acre farm above described. Appellee is now past 75 years of age. W. B. Chase has caused a deed to be executed by Florence Chase to himself; that the lands are not susceptible to be partitioned or divided in kind. She prayed for a decree partitioning the land, and that said lands be sold and the proceeds be divided among said parties according to their interest therein.

Appellants filed answer denying most of the allegations in the complaint, and alleging that the farm was to belong to Florence Chase, and that Chase and Andrus

purchased the personal property for $1,000, each of them paying $500. All the allegations with reference to appellee's right or interest in the lands are specifically denied by appellants. They admit the execution of the will, but deny that Andrus had any right or interest in the land. They also describe the purchase of the property in detail, which contradicts the statements in appellee's complaint. They allege in their answer a supplementary contract in which Andrus was to pay $500 on the personal property, his deposit in the bank in escrow to be used for that purpose; that they were to share in all the proceeds from the sale of any or all the personal property; that Andrus and his wife, the appellee, were to live with Chase and his wife as a part of the family as long as it was mutually agreeable.

The evidence is in conflict, and it would serve no useful purpose to set it out in full. The admitted facts are that Andrus put up $500 in escrow to pay on the land; that he paid the $1,000 mortgage, which at the time he paid it, in June following their trade in December, amounted to $985; that he built the blacksmith shop; that he paid for material amounting to something more than $50; that he made a will in which he bequeathed his interest in this particular property to appellee. The house on the farm burned and was rebuilt, and, except during the time that it was being rebuilt, appellee has lived on the farm from the time they purchased it until now, and is still living on it.

The evidence is conflicting as to the purpose for which Andrus paid the $985, but it is not disputed that he paid it. The court found that the title to the property is held in trust for the appellee to the extent of payments made by her and her husband of the purchase price of the lands, and ordered that the lands be sold and the proceeds divided among the parties according to their respective interests, and found that the interest of the appellee was one-fourth of the value of the farm. This appeal is prosecuted to reverse the decree of the chancellor.

It is the contention of the appellant that a trust was not created and that for that reason appellee is not en-

titled to any interest in the land. They call attention to *Hatcher* v. *Wasson, Bank Commissioner,* 191 Ark. 765, 87 S. W. (2d) 578. In that case there was a suit pending against Hatcher and it was discovered before the sale that Hatcher had conveyed the property, except his homestead, to his two sons, a separate portion to each. His sons did not pay anything, and the conveyance was manifestly for the purpose of defeating his creditors, and the court held that the conveyances were void. The court said in that case: ''To create such a trust by reason of the payment of the purchase price, the payment must be made at the time of the purchase or prior thereto so as to form a part of the same transaction.'' In that case there was no consideration except love and affection for his children.

The next case to which appellant calls attention and relies on is *Chaffin* v. *Crow,* 182 Ark. 621, 32 S. W. (2d) 155. In that case, Crow and his wife and children had been killed in an accident. At the time of his death he was the owner, by warranty deed, of certain lands in Boone and Newton counties. He died intestate. Chaffin, the father of Mrs. Crow, brought suit seeking to be declared the owner of one-half interest in the lands of which Claude Crow died seized and possessed, and asking for a partition, and asked that a trust be declared inuring to the benefit of Chaffin. The evidence simply showed that at one time Chaffin had given his daughter, Mrs. Crow, the sum of $750. The court held that no trust resulted in his favor.

Appellants then call attention to *Kerby* v. *Field,* 183 Ark. 714, 38 S. W. (2d) 308. In that case a deed given was construed as a mortgage, and we do not think that case has any application here. A number of cases are referred to by the appellants, but in none of them are the facts similar to the facts here. Appellants refer to 26 R. C. L. 1223. On 1224 it is stated: ''But it is now a generally accepted rule that a resulting trust may arise in favor of one who furnishes a part of the purchase money for land, where the title is taken in another, though there is a diversity of opinion as to whether there

must be a distinct understanding that the payment is for a definite interest in land, or whether the fact of furnishing the money without more will raise a resulting trust. * * * So it is held that, where several persons contribute money to pay for land and the title is taken in the name of one of them, a resulting trust arises in favor of the others *pro tanto.*"

In the instant case, as we have already said, the undisputed proof shows that $500 in cash was put up as a payment on the land. To be sure, Chase testified that the $500 was used for purchasing the personal property, but he is contradicted in this by the appellee, and there is no evidence in the record that the purchase of the personal property was ever discussed or thought of when this $500 was put up. In addition to this, while H. C. Andrus is dead and we cannot have his testimony, his will indicates that he was the owner of an interest in this land. Then there is no satisfactory explanation by appellants as to why Andrus paid $985 to Wasson.

We do not deem it necessary to set out more of the facts. The evidence is in conflict, but we think the circumstances corroborate appellee's evidence, and we cannot say that the chancellor's finding was against the preponderance of the evidence.

The decree is affirmed.